**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Gerald GORDON, Defendant–Appellee.**

**Docket No. 97–2397.**

United States Court of Appeals,
Second Circuit.

Argued April 1, 1998.

Decided Sept. 22, 1998.

Richard A. Resnick, Assistant United States Attorney, Rochester, NY (Patrick H.

NeMoyer, United States Attorney, Western District of New York, Rochester, NY, of counsel), for Plaintiff–Appellant.

Peter J. Pullano, Rochester, NY (Law Office of Peter J. Pullano, Rochester, NY, of counsel), for Defendant–Appellee.

BEFORE: McLAUGHLIN and PARKER, Circuit Judges, and EGINTON\*, District Judge.

PER CURIAM.

The United States appeals from a judgment of the United States District Court for the Western District of New York (Michael A. Telesca, *Senior Judge*) entered May 20, 1997 granting Gerald Gordon's ("Gordon") motion pursuant 28 U.S.C. § 2255 to vacate his convictions and for a new trial based upon ineffective assistance of counsel. We affirm for the reasons set forth below.

## I. FACTS

A. *Background*

On October 25, 1995, Gordon, a convicted felon, was indicted on six counts of aiding and abetting false statements made by an accomplice to two licensed firearms dealers, in violation of 18 U.S.C. §§ 922(a)(6) & 924(a)(2), and six counts of receipt or possession of firearms by a convicted felon, in violation of 18 U.S.C. § 924(g)(1).

Before trial, the parties apparently discussed the possibility of Gordon entering a guilty plea. In connection with these discussions, on April 17, 1996, Gordon's counsel, William Dedes ("Dedes"), wrote a letter to Gordon concerning his potential sentencing exposure, which concluded: "I believe a conviction or convictions under this Indictment would result in a sentence of incarceration of 120 months." Dedes also stated: "If you were to plead guilty to one count in the indictment, ... [i]t would appear that the

plea offer would reduce your exposure down to 92 through 115 months." The government, however, provided neither a written plea offer nor a draft plea agreement to Gordon.

On May 17, 1996, at a pretrial conference attended by both Gordon and the government, Dedes informed the district court that the plea offer would expose Gordon to "a sentence of eighty-four months." Further, Dedes stated that he had discussed the plea offer with Gordon but that Gordon would not accept it and asserted his innocence on all counts. After Gordon waived his right to a trial by jury, the district court held a bench trial, and it found Gordon guilty on all twelve counts.

The Probation Department then prepared a Pre–Sentence Report ("PSR") which concluded that "[b]ased on a total offense level of 34 and a criminal history category of VI, the guideline range for imprisonment is 262 to 327 months." Upon seeing the PSR, Dedes notified the district court that he had mistakenly advised Gordon that his maximum sentencing exposure upon a conviction would be only 120 months' imprisonment. Based on this error, Dedes asked to be relieved as counsel. The district court granted this request and appointed new counsel.

On February 14, 1997, Gordon, through new counsel, moved for downward departure under U.S.S.G. § 5K1.1 based on Dedes' ineffective assistance during plea negotiations.[1] In an affidavit in support of this motion, Gordon stated: "Had I been told prior to trial that ... the maximum sentence after conviction after trial could be 12 to 17 years greater than the statutory maximum for a single offense, I would have accepted the plea offer."

On April 28, 1997, the district court held a sentencing hearing at which the downward

---

\* The Honorable Warren W. Eginton, Senior Judge of the United States District Court for the District of Connecticut, sitting by designation.

1. It is quite odd that this request for downward departure was made pursuant to U.S.S.G. § 5K1.1, which covers "Substantial Assistance to Authorities." We find no evidence suggesting that Gordon offered assistance to the government which, arguably, might have enabled him to request downward departure under this section. In hindsight, we think that Gordon's request should have been made pursuant to U.S.S.G. § 5K2.0, which covers grounds for departure "not adequately taken into consideration by the Sentencing Commission in formulating the guidelines."

departure motion was discussed. Gordon testified at this hearing that at the time of the plea negotiations "all I knew was a hundred and twenty months if I was to lose at trial, and eighty-four months was the offer that [the government] gave me." Dedes also testified at the sentencing hearing, stating: "Judge, my understanding is we were all proceeding on the assumption it was ten year maximum ... in open Court ... in chambers, and at no time was my interpretation of the guidelines ever challenged." Dedes also testified that the government's plea offer to Gordon included a sentence of only seven years' imprisonment.

The government responded to this testimony by stating that its "offer to Mr. Dedes was that [the government] ... would recommend the low end of the guidelines. There was some calculation on the guidelines quickly just looking at the book without formally sitting down, and it came out to about eighty-four months which is about seven and a half years." The government claimed that the eighty-four month calculation was the product of underestimating the criminal history category and other relevant enhancements included by the Probation Department in preparing the PSR.

At the conclusion of the hearing, the district court denied Gordon's motion for a downward departure and sentenced Gordon to 210 months' imprisonment. This sentence represented the low-end of a Guidelines range of 210 to 262 months' imprisonment which was based on a total offense level of 32 and a criminal history category of VI.

### B. *Proceedings Below*

Immediately following sentencing, Gordon filed a motion pursuant to 28 U.S.C. § 2255 to vacate his convictions and for a new trial on the basis that his Sixth Amendment right to the effective assistance of counsel had been violated. On May 16, 1997, the district court held a hearing on Gordon's § 2255 motion. Apparently, Gordon made substantially the same arguments that he had made at the sentencing hearing.

The district court granted Gordon's motion in a decision and order entered May 20, 1997, holding that Gordon had satisfied the two-prong standard set out in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), required to establish ineffective assistance of counsel. The district court found that Dedes had provided ineffective assistance in failing to properly advise Gordon of his potential sentencing exposure. The district court also found that but for Dedes' inaccurate advice, Gordon would have entered into a plea agreement, and that, therefore, Dedes inaccurate advice substantially affected the outcome of the proceedings. The district court denied the Government's subsequent request for reconsideration.

## II. DISCUSSION

### A. *Jurisdiction*

As an initial matter, Gordon contends that this Court lacks jurisdiction to hear this appeal because the order of the district court was not a final judgment and, therefore, not appealable. In making this argument, Gordon relies primarily on *Andrews v. United States,* 373 U.S. 334, 83 S.Ct. 1236, 10 L.Ed.2d 383 (1963), in which the Supreme Court held that an order granting resentencing pursuant to § 2255 is not final and therefore not appealable.

"Normally, an appeal may be taken by the Government from a final ruling in proceedings under section 2255." *United States v. Hundley,* 858 F.2d 58, 60 (2d Cir.1988); *see* 28 U.S.C. § 1291. The Supreme Court, however, has held that finality in a habeas proceeding "requires that the judgment to be appealable should be final not only as to all the parties, but as to the whole subject-matter and as to all causes of action involved." *Collins v. Miller,* 252 U.S. 364, 370, 40 S.Ct. 347, 64 L.Ed. 616 (1920).

However, there are several circuit-level cases that have held that an order granting a new trial under § 2255 is final and therefore appealable. *See, e.g., United States v. Allen,* 613 F.2d 1248 (3d Cir.1980); *see also United States v. Blackwell,* 127 F.3d 947 (10th Cir.1997); *United States v. Dunham Concrete Prods. Inc.,* 501 F.2d 80 (5th Cir.1974). In *Allen,* the Third Circuit based its holding on two primary considerations. First, the Third

Circuit relied on the statutory language of § 2255, particularly paragraphs 3 and 6,[2] which provide, respectively, that a district court may enter certain specific orders granting relief and that such orders are appealable. 613 F.2d at 1250. Second, the Third Circuit noted that a habeas proceeding could be final even if the underlying criminal proceeding was altered because of the separate, civil nature of the § 2255 petition. *Id.* at 1251.

Based on these considerations, the Third Circuit distinguished *Andrews:* "The crucial question in these cases [such as *Andrews* ] in determining finality is whether the district court has entered one of the orders specified in paragraph 3 of § 2255." *Id.* at 1250. The court reasoned that in *Andrews* "[a]lthough the court decided to grant the motion, it did not enter an order resentencing the defendant.... Thus the crux in *Andrews* was whether the § 2255 court actually entered the specific order requested." *Id.* at 1250–51.

■ We find the Third Circuit's reasoning in *Allen* persuasive and hereby adopt it. Accordingly, we hold that an order granting a new trial to a criminal defendant under § 2255 constitutes a final judgment and that we therefore have jurisdiction to hear the government's appeal.[3]

### B. *Merits of the Government's Appeal*

■ The government argues that the district court erred in granting Gordon's § 2255 motion because (1) Dedes' conduct did not fall short of constitutionally required legal

assistance and (2) Gordon failed to show any prejudice therefrom. The government also argues that the district court abused its discretion in granting Gordon a new trial. We review the district court's findings of fact under a clearly erroneous standard, *see* Fed. R.Civ.P. 52(a); *Zovluck v. United States,* 448 F.2d 339, 341 (2d Cir.1971), and its application of the law *de novo. See United States ex rel. Wissenfeld v. Wilkins,* 281 F.2d 707, 710 (2d Cir.1960).

■ A criminal defendant must satisfy a two prong test in order to show ineffective assistance of counsel: (1) that counsel's representation fell below an objective standard of reasonableness measured by the prevailing professional norms; and (2) that there is a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different. *See Strickland,* 466 U.S. at 688–90, 694, 104 S.Ct. 2052; *see also United States v. Vegas,* 27 F.3d 773, 777 (2d Cir.1994). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

■ Furthermore, the defendant's Sixth Amendment right to counsel attaches at all critical stages in the proceedings "after the initiation of formal charges," *Moran v. Burbine,* 475 U.S. 412, 431, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986), which has been held to include plea negotiations. *See Boria v. Keane,* 99 F.3d 492, 496–97 (2d Cir.1996) (holding that ineffective assistance of counsel during plea negotiations justified § 2254 habeas relief); *United States v. Day,* 969 F.2d

---

**2.** The Third Circuit explained its interpretation of § 2255:

> Paragraph 6 of § 2255 provides that an appeal may be taken "from the order entered on the motion." Paragraph 3 of § 2255 states exactly what orders may be entered if the motion is granted: "the court shall vacate and set judgment aside and shall discharge the prisoner or resentence him or *grant a new trial* or correct the sentence as may appear appropriate." ... Reading paragraphs 3 and 6 together, because the grant of new trial is an "order entered on the motion" within the meaning of paragraph 6, it would seem that Congress contemplated appeals from the grant of a new trial.

*Allen,* 613 F.2d at 1250.

**3.** It is of note that our cases concerning nonfinality of habeas corpus orders in extradition cases are inapposite to our holding in this case. *See, e.g., United States v. Bishopp,* 286 F.2d 320 (2d Cir.1961) (finding that order remanding extradition for further proceedings to be not final and not appealable). Again, we agree with the Third Circuit in *Allen* distinguishing *Collins,* 252 U.S. 364, 40 S.Ct. 347, upon which *Bishopp* relied, that: (1) the "realities of extradition procedure have no application here" where "[t]here is no direct appeal, ... [and] the only relief being limited review through habeas corpus;" (2) "a remand by the district court is not a final order" because "the habeas court retain[s] jurisdiction;" and (3) the order to remand is not listed in paragraph 3 of § 2255. *Allen,* 613 F.2d at 1252.

39, 44 (3d Cir.1992) (holding that § 2255 could provide relief where trial counsel was ineffective by giving defendant substandard advice about his sentence exposure under the Sentencing Guidelines during plea negotiations); *Toro v. Fairman*, 940 F.2d 1065, 1067 (7th Cir.1991); *Beckham v. Wainwright*, 639 F.2d 262, 267 (5th Cir.1981).

As we have previously noted, " '[t]he decision whether to plead guilty or contest a criminal charge is ordinarily the most important single decision in a criminal case … [and] counsel may and must give the client the benefit of counsel's professional advice on this crucial decision.' " *Boria*, 99 F.3d at 496–97 (quoting Anthony G. Amsterdam, *Trial Manual 5 for the Defense of Criminal Cases* (1988)). Finally, it follows that "[k]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." *Day*, 969 F.2d at 43.

### 1. *Ineffective Assistance of Counsel*

■ The government first argues that Dedes was not ineffective because his letter to Gordon accurately informed him of the full extent of his sentencing exposure upon conviction. The district court found that "[a]lthough Dedes does mention in his letter that there is a possibility that Gordon could be sentenced to ten years for each count under the indictment consecutively, his conclusion is clear" that Gordon faced a maximum " 'incarceration of 120 months.' " This finding is not clearly erroneous and supports the conclusion that Dedes' conduct fell below an objective standard of reasonableness.

By grossly underestimating Gordon's sentencing exposure in a letter to his client, Dedes breached his duty as a defense lawyer in a criminal case "to advise his client fully on whether a particular plea to a charge appears desirable." *Boria*, 99 F.3d at 496 (quotation marks and citation omitted). Therefore, we agree with the district court in finding that Dedes' legal assistance "fell below the prevailing professional norms" for advising a client during plea negotiations of his maximum exposure to imprisonment at sentencing.

### 2. *"Reasonable Probability" that the Outcome Would Differ*

The government contends that, even if Dedes made unprofessional errors, there is no "reasonable probability" that the outcome would have been different because (1) the government and the district court repeatedly advised Gordon before trial that he faced a *minimum* sentence of ten years' imprisonment; (2) the government made no formal plea offer; and (3) assuming, *arguendo*, that a plea offer existed, Gordon's self-serving, post-conviction statement was insufficient by itself to meet his burden of proving the "reasonable probability" that he would have in fact accepted the offer.

■ The district court rejected the government's first argument, finding that, regardless of the information supplied by both the government and the district court, "Gordon relied on his counsel's erroneous advice regarding the risks of trial in formulating his decision to reject plea negotiations, maintain his innocence, and go to trial." This finding of the district court was not clearly erroneous. As to the government's second argument, the district court noted that whether the government had made a formal plea offer was irrelevant because Gordon was nonetheless prejudiced because he did not have accurate information upon which to make his decision to pursue further plea negotiations or go to trial. We agree with this conclusion.

Accordingly, Gordon suffered prejudice if his reliance on Dedes' advice affected the outcome of the proceedings. The district court found that Gordon was so prejudiced. This finding rested principally upon Gordon's post-trial statement that but for Dedes' advice he would have taken whatever plea had been offered. The Government contends the district court's determination of "reasonable probability" that the outcomes would differ could not properly rest upon Gordon's self-serving, post-conviction testimony alone, especially because Gordon continually professed his innocence before and during trial.

The Seventh Circuit has expressed doubt as to whether a defendant's self-serving, post-conviction testimony regarding his in-

**381**

tent with respect to a plea offer would be sufficient, by itself, to establish a "reasonable probability" that he or she would have accepted the plea agreement. *See Johnson v. Duckworth,* 793 F.2d 898, 902 n. 3 (7th Cir. 1986). As a result, the Seventh Circuit requires some further "objective evidence" that a petitioner would have accepted a plea offer. *See Toro v. Fairman,* 940 F.2d 1065, 1068 (7th Cir.1991); *see also Diaz v. United States,* 930 F.2d 832, 835 (11th Cir.1991) (finding awareness of plea offer and after-the-fact testimony concerning desire to plead is insufficient evidence). This "objective evidence" rule is consistent with our holding in *Boria. See* 99 F.3d at 497.

Aware of the "objective evidence" precedent, the district court rejected the Government's argument because "[t]he fact that there is a great disparity between the actual maximum sentencing exposure under the Sentencing Guidelines and the sentence exposure represented by defendant's attorney provides sufficient objective evidence to establish a reasonable probability that the outcome of the proceedings would differ." We agree with the district court that such a disparity provides sufficient objective evidence—when combined with a petitioner's statement concerning his intentions—to support a finding of prejudice under *Strickland.* Accordingly, we affirm the district court's determination that Gordon satisfied the two prongs of the *Strickland* test for ineffective assistance of counsel and is therefore entitled to habeas relief.

### 3.  *Habeas Remedy*

■ Finally, the Government argues that the even "if it is determined that a Sixth Amendment violation occurred, the appropriate remedy is resentencing rather than vacatur of the underlying convictions." The Government contends that "[a] sentence should be imposed consistent with the limited plea discussion between the parties, which consisted of a recommendation by the government that the low end of the applicable guideline range be imposed. This range, after taking into account the two level reduction for acceptance of responsibility, is 168 to 210 months." Accordingly, the Government requests that we order Gordon to be resentenced to 168 months' imprisonment. In support of this argument, the Government primarily relies on *Boria,* 99 F.3d at 498–99. We review the district court's choice of remedy under § 2255 for an abuse of discretion. *See* 28 U.S.C. § 2255; *cf. Day,* 969 F.2d at 47.

The Supreme Court has announced that where there has been a finding of ineffective assistance of counsel in a § 2255 proceeding, the remedy "should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." *United States v. Morrison,* 449 U.S. 361, 364, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981). Those "competing interests" include "the necessity for preserving society's interest in the administration of criminal justice." *Id.*

■ In *Day,* the Third Circuit applied the principles in *Morrison* to a petitioner who complained of ineffective assistance of counsel during plea negotiations based on his lawyer's incorrect estimate of the maximum sentencing exposure. In that context, the Third Circuit interpreted *Morrison* to mean that "a second opportunity to accept a plea agreement ought not be automatic, but it does not follow that the relief of 'specific performance' of a plea bargain is never appropriate." 969 F.2d at 47. Further, "the district court would have considerable discretion in fashioning a remedy appropriate under the circumstances." *Id.*

In *Boria,* we ordered that the § 2254 petitioner's sentence be reduced to time served and that he be discharged but that the judgment of conviction should remain because: (1) the trial was not affected by constitutional error; (2) there was no assurance that witnesses necessary for the prosecution would be available for a new trial; and (3) the petitioner had served six years in prison which was twice as long as the three-year plea offer. 99 F.3d at 499. We do not believe that the logic used in arriving at the remedy in *Boria* is necessarily applicable to the instant case. It is true that the district court found that Gordon's trial was not affected by constitutional error. However, the lapse of time between trial and Gordon's

habeas petition does not present a serious practical obstacle to re-trial.

Furthermore, in *Boria,* we made no ruling that resentencing was the sole remedy available for ineffective assistance of counsel during plea negotiations. In fact, we found that a new trial was not necessarily impossible but merely inappropriate under the circumstances of that case. *Boria,* 99 F.3d at 499. This circumspect approach is appropriate considering that § 2255 leaves the choice of relief in a habeas case to the sound discretion of the judge ruling on the motion. *See* 28 U.S.C. § 2255.

Therefore, the district court did not abuse its discretion in vacating Gordon's convictions and granting him a new trial.

### III. CONCLUSION

We affirm the judgment of the district court in all respects.