**John M. PURDY, Jr., Plaintiff,**

v.

**Jacob D. ZELDES and Zeldes, Needle & Cooper, a Professional Corporation, Defendants.**

**No. 2:00–CV–390.**

United States District Court, D. Vermont.

Sept. 21, 2001.

---

James West Murdoch, Murdoch & Hughes, Burlington, VT, John J. E. Markham, II, Markham & Read, Boston, MA, for plaintiff.

R. Jeffrey Behm, Eric S. Miller, Sheehey, Furlong, Rendall & Behm, Burlington, VT, for defendants.

## OPINION AND ORDER

SESSIONS, District Judge.

Plaintiff John M. Purdy, Jr. ("Purdy") brought this action against Defendants Jacob D. Zeldes ("Zeldes") and the law firm of Zeldes, Needle & Cooper ("ZNC") (together, "Defendants") for attorney malpractice, breach of fiduciary duty, and misrepresentation arising from Defendants' allegedly inadequate representation of Purdy during investigation and through his trial and appeal on violations of the Anti–Kickback Act. Defendants have moved for summary judgment on all of Purdy's claims. For the reasons below, that motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. Background

The following facts are either undisputed or construed in the light most favorable to Purdy, the nonmoving party.

From 1978 to June 1995, Purdy was President and CEO of The Purdy Corporation ("Purdy Corp."), a manufacturer of aircraft parts and components located in Manchester, Connecticut. During that time, Purdy Corp. supplied aircraft parts and components to various large manufacturers, which in turn used those parts to manufacture or repair aircraft for sale to the United States military. Over the years, the purchasing agents for these large manufacturers began expecting gifts and payments from suppliers such as Purdy, many of whom provided such gifts in order to persuade the purchasing agents to approve their parts and components (rather than those of other suppliers) for purchase.

In the early 1990s, one of Purdy's customers was the Sikorsky Aircraft Division of United Technologies Corporation ("Sikorsky"), which manufactured helicopter parts and overhauled and repaired helicopters for the U.S. Department of Defense. Sikorsky, through its purchasing agents, bought parts and components from various suppliers for these purposes and Purdy Corp. derived a significant part of its income from such business with Sikorsky.

Consistent with the practices described above, a Sikorsky purchasing agent demanded that Purdy Corp. pay him $5,000 per month if Purdy wanted him to continue to select Purdy parts and components rather than those of other suppliers. Purdy decided to pay the Sikorsky agent what he demanded in order not to jeopardize the financial well-being of Purdy Corp. Thus, Purdy Corp. provided such payments to the Sikorsky agent during a period of approximately eight months, from mid–1990 until early 1991. The payments from Purdy Corp. to the Sikorsky agent totaled between $50,000 and $70,000. By the middle of 1991, these payments had ceased.

Beginning in late 1993, the federal government learned of the widespread practice of suppliers bribing purchasing agents and began conducting an investigation into these matters ("the investigation"). Eventually, the investigation resulted in a series of prosecutions of the agents of suppliers (including Purdy) who had made the decision to bribe buyers, many of whom, like Purdy, were first-time offenders.

In March 1995, after Purdy learned that he was being investigated in connection with the bribes but before he was indicted, Purdy hired Defendants to represent him. That representation continued through Purdy's indictment, jury trial, sentencing, and appeal. Purdy paid Defendants more than $800,000 for their representation.

The jury convicted Purdy of conspiring to pay kickbacks, and Purdy was sentenced to 37 months in prison, a fine of $250,000, and 400 hours of community service. As a result of his conviction, Purdy was also debarred from working in the defense industry for three years. Well over a year after his original sentencing, and after exhausting all of his appeals, Purdy got his sentence reduced to eighteen months under Federal Rule of Criminal Procedure 35(b) for cooperating with the government. This reduction in sentence, Purdy alleges, was brought about by the efforts of counsel other than Defendants.

After his Rule 35 reduction in sentence, Purdy filed a habeas corpus petition under 28 U.S.C. § 2255 claiming that Defendants provided ineffective assistance of counsel in violation of Purdy's Sixth Amendment rights. In support of his petition, Purdy argued that (1) Zeldes did not accurately or fully inform him about plea discussions that Zeldes had with the prosecutor, (2)

Zeldes did not provide Purdy with adequate advice about plea options, and (3) if Zeldes had properly informed Purdy of the plea discussions, Purdy would have pleaded guilty and his sentence would have been less than the 18 months he is presently sentenced to serve. The district court denied Purdy's petition, holding that he had not shown prejudice under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), but did not decide whether Defendants' representation of Purdy was deficient. On appeal, the Second Circuit affirmed the district court's finding of no prejudice and also held that Purdy failed to demonstrate that his counsel's performance was deficient.

According to Purdy, all of the twenty-nine other first-time offenders who were prosecuted in connection with the investigation pled guilty and received non-incarcerative sentences; the highest fine received other than Purdy's was $30,000.

Purdy contends that his sentence was so much more severe than the other first-time offenders because he had gone to trial, and that he only went to trial because Zeldes gave him "incomplete and misleading advice" before trial about the alternative of pleading guilty. Purdy's Mem. of Law in Opp'n to Defs.' Mot. for Summ.J. at 6 (Paper 26) [hereafter, "Purdy's Mem."]. If it were not for Zeldes' misleading advice, Purdy claims, he would have done as all the other twenty-nine first time defendants did—that is, "plead guilty and receive probation and a fine." *Id.*

Specifically, Purdy's primary complaint regarding Defendants' pre-sentencing conduct is that Zeldes failed to inform Purdy of remarks the prosecutor made about Purdy's likely sentence if he pled guilty. First, the prosecutor had told Zeldes that "the case would probably go to Judge Burns and he didn't know of any case where a white collar criminal with those guidelines had gone to jail with Judge Burns or Judge Dorsey [another judge in the district]." File Mem. dated Apr. 27, 1995, ¶ 11 (Paper 27, Ex. E) [hereafter, "4/27/95 File Mem."]. Then, on another occasion, the prosecutor stated that he "felt that if there was a plea and Mr. Purdy was sentenced by Judge Burns or Judge Dorsey, that [Purdy] would probably get a suspended sentence." File Mem. dated June 14, 1995, ¶ 3 (Paper 27, Ex. F). The prosecutor had also indicated to Zeldes that if there were a plea and cooperation, there would not only be a 5K motion, but that "such assistance might help Mr. Purdy get back in the defense industry again." 4/27/95 File Mem. ¶ 9.

Rather than accurately describing these conversations to Purdy, Zeldes wrote to him that after conviction if he went to trial, his sentencing "range would be approximately 27 to 33 months of incarceration," Letter from Zeldes to Purdy dated Jan. 16, 1996, at 2 (Paper 27, Ex. H), whereas "the Government has advised that on a plea of guilty, the charge would be limited to a single count and the likely period of incarceration would be between 18 to 24 months, with the possibility, but not a certainty, for a lesser sentence," *id.* at 3. Purdy also contends that Zeldes failed to learn of and/or disclose to Purdy that the other first-time offenders charged with the same offense had agreed to plead guilty and had avoided a prison sentence and any large fine.

Purdy has a separate claim relating to Defendants' alleged failures after Purdy's sentencing. Specifically, Purdy alleges that he asked Defendants more than a year after he was sentenced if it would still be possible to cooperate with the government in exchange for a reduced sentence. Defendants told Purdy that because more than a year had passed since sentencing, it was probably too late, but that they would look into it. They never followed up on

this conversation, however, even though in fact Purdy was able to (and did in fact) cooperate and receive a reduction in sentence (through the efforts of another lawyer), several months after his overtures regarding cooperation to Defendants.[1]

Purdy alleges that had Defendants promptly followed up on his offer to cooperate, his reduction in sentence would have been greater, since at the time he originally expressed willingness to cooperate, his appeals were not yet exhausted. After he finally did cooperate, with respect to his Rule 35 motion, Purdy alleges that "the government never tired of saying that Purdy had a heavier cooperation burden since he had waited through his appeal, the appellate decision, a petition for rehearing, and a decision, and *certiorari*, before cooperating." Purdy's Mem. at 7. Thus, "[h]is Rule 35 reduction, [Purdy] contend[s] and will show through discovery and at trial, was less than it would have been had Zeldes initiated cooperation proceedings when Purdy asked him to." [2] *Id.*

Finally, in his complaint, Purdy alleged an additional failure by Defendants which he now abandons as a separate claim. Namely, Purdy alleged that Defendants failed to adequately represent him after his conviction when the Department of Defense wrote to Purdy asking that he provide reasons why he should not be debarred from the defense industry. Defendants not only failed to respond to this request, Purdy claimed, but also failed to discuss the matter with Purdy before deciding not to respond. In Purdy's opposition to Defendants' motion for summary judgment, however, Purdy states that he "do[es] *not* intend to pursue a claim of 'negligent default' on Zeldes' part for having failed to defend the debarment notice." *Id.* at 21. Rather, Purdy's

> only points about debarment will be that (1) it was a significant cost to Purdy of the disastrous decision to go to trial (since . . . those who pleaded guilty were not debarred), (2) Zeldes never raised this consequence with Purdy, and (3) Zeldes never discussed with Purdy the prosecutor's express suggestion that a plea and cooperation "might help Mr. Purdy get back into the defense industry again."

*Id.*

Zeldes admits that he withheld the information from Purdy about the prosecutor's predicted sentence because he felt it was inaccurate (he had just had a white-collar defendant receive a 41–month sentence from Judge Dorsey), and he did not want to give Purdy false hopes. Zeldes maintains that he did not urge Purdy to plead guilty or cooperate with the government because Purdy had steadfastly asserted to Zeldes that he was innocent, and Zeldes did not want to coerce Purdy into pleading guilty to a crime that he did not commit. Nevertheless, Zeldes informed Purdy regarding the strength of the government's

---

1. Purdy was able to cooperate and receive a reduction in sentence because Federal Rule of Criminal Procedure 35(b) provides that "[t]he court may consider a government motion to reduce a sentence made one year or more after the sentence is imposed if the defendant's substantial assistance involves information or evidence not known by the defendant until one year or more after sentence is imposed." Apparently, Purdy's substantial assistance qualified under this part of the rule.

2. During the hearing on this matter, counsel for Purdy made a proffer that when Purdy originally sought to cooperate through Defendants in January of 1998, the prosecutor had just been "pummeled" by the Second Circuit at oral argument on Purdy's appeal and "everyone," including the prosecutor, thought from the way oral argument had gone that Purdy was probably going to win. Thus, Purdy suggests, that would have been a much better time to try to strike a deal with the prosecutor than after Purdy had lost all of his appeals.

case and told Purdy about the government's offers to plea bargain. Purdy admits that he lied to his lawyers about his guilt and other matters relevant to trial because he was under the impression that he needed to convince his lawyer of his innocence in order to avoid conviction.

Defendants now move for summary judgment on all of Purdy's claims. They argue that

[w]ithout exception, each of Purdy's claims necessarily relies, at least in part, on factual allegations or legal theories thoroughly litigated and decided against Purdy in the context of his criminal case and post-trial motions. Under well-established rules of collateral estoppel, Purdy is precluded from attempting to litigate these issues yet again in this action. Defs.' Mem. of Law in Supp. of Mot. for Summ.J. at 1–2 (Paper 22) [hereafter, "Defs.' Mem."].

As to Purdy's claims arising from Zeldes' failure to adequately advise him regarding his option to plead guilty instead of going to trial, Defendants argue that such claims are precluded by the findings made by the district and circuit courts in the habeas proceedings. As to Purdy's claim premised on Zeldes' alleged failure to properly advise Purdy regarding the likely effect of post-sentence cooperation, Defendants argue that "the undisputed record of Purdy's criminal case demonstrates that Purdy suffered no cognizable harm because he *did* cooperate in a fashion deemed timely under Rule 35 and he *did* receive a reduced sentence based on that cooperation." *Id.* at 12.

## II. Summary judgment standard

Summary judgment should be granted when there is no dispute as to material facts and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact remains for trial. *Consarc Corp. v. Marine Midland Bank, N.A.,* 996 F.2d 568, 572 (2d Cir.1993). The evidence of the nonmoving party should be taken as true, and all justifiable inferences should be drawn in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If, upon examination of the record, the Court finds that any material issue remains in dispute, the motion for summary judgment must be denied. *Gibson v. Am. Broad. Cos.,* 892 F.2d 1128, 1132 (2d Cir.1989).

## III. Discussion

 Federal law should govern the collateral estoppel effect of the prior proceedings in this case. *See Gelb v. Royal Globe Ins. Co.,* 798 F.2d 38, 40–43 (2d Cir.1986). Under that law, for collateral estoppel to apply to a particular dispute, (1) the issues in both proceedings must be identical, (2) the issue in the prior proceeding must have been actually litigated and actually decided, (3) there must have been a full and fair opportunity for litigation in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits. *Id.* at 44.

 Purdy argues, first, that collateral estoppel cannot apply to his claims insofar as they relate to Zeldes' alleged failure to properly inform Purdy of his post-sentencing opportunities to cooperate under Federal Rule of Criminal Procedure 35(b), as that was not litigated in any prior proceeding. The Court agrees.

Although Defendants characterize their motion as based on principles of collateral estoppel, they argue that "Zeldes' allegedly negligent post-sentence advice did not in any way affect the extent or timeliness of Purdy's cooperation, or the weight that the

court gave that cooperation in reducing Purdy's sentence. As a result, Purdy cannot demonstrate that he was injured as the result of this supposed deficiency." Defs.' Mem. at 12. This seems more like an argument that, as a matter of law, no damages could have flowed from Zeldes' alleged negligence regarding Purdy's post-sentence cooperation opportunities, rather than a collateral estoppel argument. Defendants contend, however, that the judge's finding that Purdy's Rule 35 motion was "timely" collaterally estops Purdy from bringing his claim regarding Zeldes' post-sentence cooperation advice. The Court disagrees: the simple fact that the judge found Purdy's Rule 35 motion to be technically "timely" does not preclude a finding that his reduction in sentence might have been greater if his cooperation had been offered *earlier.*

Moreover, the Court agrees with Purdy that it cannot, at this stage of the litigation, conclude as a matter of law that no damages flowed from Zeldes' failure to at least attempt to initiate cooperation promptly after Purdy asked about it. The Court is concerned that this claim may be very difficult to prove, as it may require the fact finder to speculate about what the sentencing judge would have done had Purdy cooperated earlier, particularly since the plea agreement was not binding on the court in any way. Nonetheless, the Court believes Purdy should have the opportunity to conduct discovery [3] to gather evidence to support this claim. If, after adequate opportunity for discovery, Defendants still believe that there is no evidence to support the conclusion that damages flowed from Zeldes' alleged failure here, they may renew their motion for summary judgment on this claim.

Purdy also argues that collateral estoppel should not apply to his claims regarding Zeldes' failure to adequately inform him about the plea option. Collateral estoppel does not apply to these claims, Purdy argues, because the burden placed on Purdy by the district court in the habeas proceeding was actually heavier than the preponderance standard Purdy would have to meet in this civil action.

■ In order to prevail on a ineffective assistance of counsel claim under *Strickland,* a habeas petitioner must show both that his or her counsel's performance was deficient and that there is a "reasonable probability" that, absent counsel's errors, there would have been a different result (i.e., "prejudice"). *See* 466 U.S. at 687, 694, 104 S.Ct. 2052. *Strickland* defined "reasonable probability" as "a probability sufficient to undermine confidence in the outcome [of the case]." *Id.* at 694, 104 S.Ct. 2052. As the Second Circuit has recognized, *see Lindstadt v. Keane,* 239 F.3d 191, 204 (2d Cir.2001), the standard for showing prejudice requires petitioners to show more than simply that counsel's errors "had some conceivable effect," but they are not required to prove that the errors "more likely than not altered the outcome in the case." *Strickland,* 466 U.S. at 693, 104 S.Ct. 2052. Thus, the "reasonable probability" standard is lower than the preponderance standard applicable in a civil malpractice action such as this. *See id.* at 694, 104 S.Ct. 2052 ("The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome.").

■ Notwithstanding this fact, Purdy argues that he was subject to a higher

---

**3.** The parties had agreed to stay all discovery until after the Court's ruling on the instant motion. Thus, Purdy has not yet had an opportunity to conduct any discovery to support his claims.

standard during his habeas proceeding because the district judge "repeatedly quoted *Strickland,* which all court's [sic] read as requiring a serious burden." Purdy's Mem. at 16. Purdy argues that the district court "held that it 'must indulge a strong presumption' against Purdy," *id.* at 17 (quoting *United States v. Purdy,* Crim. No. 3:95CR00100(AVC), slip op. at 6 (D.Conn. July 27, 1999) (Paper 23, Ex. 5) [hereafter "District Court Decision"] ), and that Purdy had to " 'overcome the threshold hurdle that the challenged judgment carries with it [a] presumption of regularity,' " *id.* (quoting District Court Decision at 5). Further, Purdy argues that the district court "insisted that 'the scope of review on a[§ ] 2255 motion should be "narrowly limited" in order to preserve the finality of criminal sentences.' " *Id.* (quoting District Court Decision at 5).

Finally, Purdy argues that the burden in his habeas proceeding was heavier than that which would be applied in this action because the district court relied on an "objective evidence rule," under which a habeas petitioner is allegedly required to produce more than his own "self-serving" testimony in support of the allegation that the outcome of the case would have been different. *See id.* at 17–18. Purdy contends that "[t]here is simply no such added 'objective evidence' burden in a civil malpractice case." *Id.* at 18.

The district court in Purdy's habeas case did state that "[i]n *United States v. Gordon,* 156 F.3d 376, 380–81 (2d Cir.1998) [ (per curiam) ], the court concluded that: '[a defendant's] self-serving, post-conviction statement was insufficient by itself to meet [the defendant's] burden of proving the "reasonable probability" that [the de-fendant] would have in fact accepted the offer." ' " [4] District Court Decision at 9. The district court then concluded that "Purdy's self-serving post-conviction testimony alone is insufficient to demonstrate a reasonable probability that but for Zeldes' alleged communications failure, the outcome of the case would have been different...." *Id.* However, the court also went on to state that it did "not find credible Purdy's testimony that: 1) he would have pleaded guilty had he been advised of the speculative comments made by Califano; or 2) he would have cooperated had he been advised of the government's comments." *Id.* at 10. Thus, even absent any application of an "objective evidence" rule, it seems clear that the habeas court would have rejected Purdy's contention that he was prejudiced by Zeldes' alleged errors.

Moreover, the language quoted by the district court regarding any presumption against Purdy only relates to the reasonableness of counsel's conduct, and not the likelihood that such conduct affected the outcome of the case. *See id.* at 6 (" Because of the difficulties inherent in making the evaluation [of effectiveness], a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' ") (quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052). Furthermore, the Court believes that the language quoted by the district court regarding "the threshold hurdle that the challenged judgment carries with it the presumption of regularity" and the "narrowly limited" scope of review

---

**4.** Although the *Gordon* court discussed the government's proposed "objective evidence" rule with some apparent approval, it did not explicitly adopt any such rule. Rather, it simply found that, in that case, there was sufficient objective evidence in addition to petitioner's statements to support a finding of prejudice under *Strickland.* *See* 156 F.3d at 381.

are guiding principles for courts to follow, but do not change the "reasonable probability" standard for determining prejudice such that it becomes higher than the preponderance standard applicable in this action.

Finally, the Court finds persuasive that the Second Circuit affirmed the finding of no prejudice made by the district court, and without mentioning the supposed requirement that Purdy's testimony be bolstered by "objective evidence," held that "[t]here [wa]s no reasonable basis for [it] to upset the district court's credibility determination of Purdy's post-conviction testimony, or its holding that Purdy has failed to demonstrate a reasonable probability that the outcome would have been different had Zeldes performed in the manner Purdy now says he should have." *Purdy v. United States*, 208 F.3d 41, 49 (2d Cir. 2000). Thus, the Court disagrees with Purdy that the burden placed on him by the district court and the Second Circuit in his habeas proceeding was higher than that which would be applicable in this malpractice action.

If Purdy was not "prejudiced" by Defendants' alleged errors (i.e., if the outcome would not have been different had counsel avoided those errors), then there obviously can be no damages flowing from any of those alleged errors for purposes of this action. The Court therefore holds that in the circumstances of this case, where both the district court and the Second Circuit found that Purdy had failed to establish prejudice under *Strickland*, Purdy is now collaterally estopped from re-litigating the issues presented in his habeas petition in this action.[5]

A number of courts have held that where the factual predicate to a civil malpractice claim was unsuccessfully litigated through a habeas petition (or other form of collateral attack on a conviction or sentence) alleging ineffective assistance of counsel, the malpractice claim is barred by principles of issue preclusion. *See, e.g., McCord v. Bailey*, 636 F.2d 606, 608–11 (D.C.Cir.1980); *Kowalczyk v. Gilroy*, 994 F.Supp. 410, 411–12 (E.D.N.Y.), *aff'd*, 1998 WL 904325, 166 F.3d 1200 (2d Cir.1998); *Ospina v. Booth*, 94 CIV. 8163(JFK), 1995 WL 386485, at *2–3 (S.D.N.Y. June 29, 1995); *Zeidwig v. Ward*, 548 So.2d 209, 214 (Fla.1989); *Younan v. Caruso*, 51 Cal. App.4th 401, 59 Cal.Rptr.2d 103, 107–11 (1996); *Knoblauch v. Kenyon*, 163 Mich. App. 712, 415 N.W.2d 286, 292 (1987). The Court does not find it necessary to adopt such a blanket rule, since the collateral estoppel effect of the prior proceeding may depend on the specific approach taken by the courts addressing the petition in a particular case. In this case, however, collateral estoppel applies to Purdy's claims arising from the same factual allegations that were addressed by the habeas court. Therefore, Defendants are entitled to summary judgment on all of Purdy's claims relating to Defendants' alleged deficiencies through sentencing—i.e., Purdy's claim that Zeldes failed to adequately inform him about his plea option, thereby inducing him to go to trial. Thus, Purdy's only remaining claim is that Zeldes failed to adequately inform him about his post-sentence cooperation opportunities.

## IV. Conclusion

For the reasons cited above, the Court **GRANTS IN PART** and **DENIES IN**

---

5. Because the Court finds that, to the extent the district court relied on an "objective evidence" rule in rejecting Purdy's claim, that reliance was not dispositive to its finding of no prejudice, the Court need not decide whether under other circumstances such a rule would raise the burden so as to render the application of collateral estoppel in a later malpractice action improper.

**PART** Defendants' motion for summary judgment. Specifically, Defendants' motion is **GRANTED** with respect to all of Purdy's claims regarding alleged deficiencies in Defendants' representation of him through sentencing; the motion is **DENIED WITHOUT PREJUDICE** with respect to Purdy's allegation that Zeldes failed to accurately inform or represent him regarding his post-sentence cooperation opportunities. The parties are further **ORDERED** to file a new discovery schedule within ten days from today's date.