George **CRISCI,** Petitioner–Appellant,

v.

**UNITED STATES of America,**
**Respondent–Appellee,**

No. 03–2993.

United States Court of Appeals,
Second Circuit.

Aug. 31, 2004.

26

Jeremy Gutman, New York, NY, for Petitioner–Appellant.

Barbara Guss, Assistant United States Attorney, Southern District of New York (Peter G. Neiman, Assistant United States Attorney, of counsel, David N. Kelley, United States Attorney, on the brief), for Respondent–Appellee.

PRESENT: MINER, STRAUB, Circuit Judges, and FEUERSTEIN, District Judge.*

*SUMMARY ORDER*

Petitioner–Appellant George Crisci appeals from the order entered December 1, 2003 in the United States District Court for the Southern District of New York (Denny Chin, *Judge*) denying Crisci's habeas corpus petition pursuant to 28 U.S.C. § 2255. In his petition, Crisci sought to vacate his conviction and sentence for bank fraud and for making false statements to federal law enforcement agents on the ground that he was denied effective assistance of counsel regarding the possibility of pleading guilty. Though his petition was denied, the court granted a certificate of appealability. We assume familiarity with the facts of this case, its procedural context, and the issues that have been raised for appellate review.[1]

We evaluate a claim that defense counsel provided ineffective assistance in viola-tion of the Sixth Amendment under the two-part test in *Strickland v. Washington,* 466 U.S. 668, 687–88, 693–94, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under that test, Crisci "must show both that his counsel's performance was deficient as measured by objective professional standards, and that this deficiency prejudiced his defense." *Purdy v. United States,* 208 F.3d 41, 44 (2d Cir.2000); *see also Strickland,* 466 U.S. at 687 (1984); *Chang v. United States,* 250 F.3d 79, 84 (2d Cir.2001). "A defendant suffers a Sixth Amendment injury where his attorney fails to convey a plea offer. Defense counsel have a constitutional duty to give their clients professional advice on the crucial decision of whether to accept a plea offer from the government." *Pham v. United States,* 317 F.3d 178, 182 (2d Cir.2003); *Boria v. Keane,* 99 F.3d 492, 498 (2d Cir.1996). "Even if there might be circumstances where defense counsel need not render advice as to acceptance of a plea bargain, there can be no doubt that counsel must always communicate to the defendant the terms of any plea bargain offered by the prosecution." *Cullen v. United States,* 194 F.3d 401, 404 (2d Cir.1999).

Based on the affidavits before the District Court, it is undisputed that at or about the time that an indictment was filed against Crisci, Crisci's trial counsel, Andrew Rubin, had a meeting with Assistant United States Attorney Andrew Fish. At this meeting, the attorneys discussed the evidence against Crisci and the government's estimate, at that time, of the Sentencing Guidelines range applicable to Crisci's conduct were he to plead guilty.

---

* The Honorable Sandra J. Feuerstein, United States District Judge for the Eastern District of New York, sitting by designation.

1. We note that Crisci did not raise a Sixth Amendment challenge under *Blakely v. Washington,* — U.S. —, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), to any enhancements made to his sentence based on facts found by the District Court by a preponderance of the evidence. In accordance with *United States v. Mincey,* 380 F.3d 102 (2d Cir.2004), such a challenge would have been rejected.

It is also undisputed that Rubin discussed with Crisci the possibility of pleading guilty on one or more occasions.

What is disputed, however, is whether Crisci was made aware of Rubin's discussion with the prosecution and whether Crisci was, at any time, made aware with any specificity of what his sentencing exposure would be were he to plead guilty. Crisci claims that he was not made aware of the plea discussion nor of his potential sentencing exposure upon a guilty plea and that if he had been properly informed, he would have pled guilty. His trial attorney's affidavit, however, notes that Crisci repeatedly proclaimed his innocence and refused to consider pleading guilty. As to the more specific issues concerning the plea discussion and Crisci's sentencing liability, his attorney claims, "While I do not remember discussing the Guidelines calculations with Mr. Crisci, it is my usual practice to discuss calculations with every client and generally explain that they face more time on a conviction after trial. I can see no reason why I did not have this discussion with Mr. Crisci unless he refused to discuss the potential plea offer, which is entirely possible."

The District Court stated that "[c]learly, Crisci and Rubin discussed at least the possibility of a plea; I find that it is more likely than not that they discussed the Guidelines and the benefits of pleading guilty, at least in a general sense, and I find further that Rubin raised the issue of a plea specifically after being approached by the prosecutor about a possible plea. Surely Crisci knew and understood that he was likely to receive a shorter sentence if he pled guilty than if he were convicted after trial." On this basis, the court concluded that Crisci "ha[d] not shown that his attorney failed to communicate a plea offer or to provide adequate advice about a plea and sentencing."

■ Given Rubin's sworn affidavit stating his practice of informing "every client" about the sentencing guidelines ranges that he faces, we do not find that the District Court erred in drawing its conclusion without a hearing. As we noted in *Chang,* a court need not hold an evidentiary hearing in every case. *Chang,* 250 F.3d at 85–86. "It may instead be perfectly appropriate, depending upon the nature of the allegations, for the district court to proceed by requiring that the record be expanded to include letters, documentary evidence, and, in an appropriate case, even affidavits." *Id.* at 86 (quoting *Raines v. United States,* 423 F.2d 526, 529–30 (4th Cir.1970)) (internal quotation marks omitted). In this case, the court considered affidavits from Crisci's trial counsel, his appellate counsel, and Crisci himself. Under the circumstances, we find that the District Court did not abuse its discretion in "choos[ing] a middle road that avoided the delay, the needless expenditure of judicial resources, [and] the burden on trial counsel and the government" associated with a full testimonial hearing. *Id.* at 86; *see also Pham,* 317 F.3d at 182 ("Our review of the district court's denial of a hearing on the habeas petition is for abuse of discretion.").

■ In any event, we find that Crisci has also failed to demonstrate prejudice under the second prong of the *Strickland* test. Under that portion of the test, Crisci must show "that there is a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different." *United States v. Gordon,* 156 F.3d 376, 379 (2d Cir.1998). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694. We require some objective evidence other than defendant's self-serving assertions to establish that Crisci

would have pled guilty had he received constitutionally effective assistance of counsel. *See Gordon*, 156 F.3d at 380–81. "However, a significant sentencing disparity in combination with defendant's statement of his intention is sufficient to support a prejudice finding." *Pham*, 317 F.3d at 182.

The parties agree that, post-trial, Crisci faced a guidelines sentencing range of 27 to 33 months' incarceration. The parties disagree, however, as to the potential plea deal Crisci could have obtained. Such a deal would ultimately have depended on the applicability, in the context of a guilty plea, of several sentencing adjustments including potential upward adjustments for abuse of trust and obstruction of justice and a potential downward adjustment for acceptance of responsibility. Crisci contends that, in a plea discussion with his trial attorney, the government estimated that Crisci could plead and be sentenced at an offense level of 12, leading to a sentencing range of 10 to 16 months. The government argues that the court would not have approved such an outcome. Rather, the government argues that even if Crisci had pled guilty, he would have still faced a sentencing range of 15 to 21 months or higher. The District Court appears to have been persuaded by this analysis and, in its own prejudice analysis, used the 15 to 21 month range.

We need not resolve this discrepancy, however, because we find that evidence of the disparity between Crisci's expected sentence upon a plea and his expected sentence post-trial was not significant enough to counter the specific, uncontroverted assertions in the affidavits that Crisci was unwilling to contemplate a guilty plea. According to Rubin, "[f]rom the beginning ... [Crisci] insisted that he was innocent and that all of the witnesses were engaged in some sort of conspiracy

against him." He also stated that he "discussed the possibility of [Crisci] taking a guilty plea on several occasion [sic] as well. Every time I would mention the possibility of a plea[,] Crisci would become annoyed, protest his innocence and insist on a trial." And more specifically, Rubin claims that he recently spoke with "Investigator Rossi, and [Rossi] recollects a meeting in my office where he, myself and Mr. Crisci were reviewing the evidence, and where I again pointed out to Crisci that the evidence was overwhelming and that he should consider a guilty plea, and that Crisci refused to consider that possibility." We find that the District Court did not err as to its prejudice determination because Crisci has failed to establish a reasonable probability that he would have pled guilty, given the evidence that he was, in fact, not interested in doing so.

For the foregoing reasons, the judgment of the District Court is hereby AFFIRMED.

The mandate in this case will be held pending the Supreme Court's decision in *United States v. Booker*, No. 04–104, 2004 WL 1713654, —— U.S. ——, 125 S.Ct. 11, —— L.Ed.2d —— (U.S. Aug. 2, 2004), and *United States v. Fanfan*, No. 04–105, 2004 WL 1713655, —— U.S. ——, 125 S.Ct. 12, —— L.Ed.2d —— (U.S. Aug. 2, 2004). Should any party believe there is a special need for the District Court to exercise jurisdiction prior to the Supreme Court's decision, it may file a motion seeking issuance of the mandate in whole or in part. Although any petition for rehearing should be filed in the normal course pursuant to Rule 40 of the Federal Rules of Appellate Procedure, the court will not reconsider those portions of its opinion that address the defendant's sentence until after the Supreme Court's decision in *Booker* and *Fanfan*. In that regard, the parties will have 14 days following the Supreme

Court's decision to file supplemental petitions for rehearing in light of *Booker* and *Fanfan*.