09-1518-pr
Andrews v. United States

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, in the City of New York, on the 18th day of June, two thousand ten.

Present:
> ROGER J. MINER,
> ROBERT D. SACK,
> PETER W. HALL,
> > *Circuit Judges*.

_____

LEMREY ANDREWS,

> *Petitioner-Appellant*,

> v.                                        No. 09-1518-pr

UNITED STATES OF AMERICA,

> *Respondent-Appellee*.

_____

For Movant-Appellant:      JONATHAN SVETKEY, Watters & Svetkey LLP, New York, N.Y.

For Respondent-Appellee:   ELIZABETH F. MARINGER, Assistant United States Attorney (Preet Bharara, United States Attorney, Katherine Polk Failla, Assistant United States Attorney, *on the brief*), New York, N.Y.

Appeal from the United States District Court for the Southern District of New York (Buchwald, *J.*).

**ON CONSIDERATION WHEREOF**, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the District Court be and hereby is **AFFIRMED**.

Petitioner-Appellant Lemrey Andrews appeals the district court's order denying his motion to set aside, pursuant to 28 U.S.C. § 2255, his convictions on racketeering, firearms, and coercion of prostitution charges. Andrews alleges that he received constitutionally ineffective assistance of counsel because his trial counsel failed to investigate why an audiotape provided by the government during discovery seemed to be blank, and an audible version of the tape later played before the jury turned out to contain self-inculpating statements made by Andrews during a telephone call from the Metropolitan Correctional Center ("MCC"). Specifically, Andrews claims that if his attorney had investigated the blank tape before trial and listened to an audible copy, he would have advised, and Andrews would have agreed, that Andrews should plead guilty rather than proceed to trial. We assume the parties' familiarity with the underlying facts and procedural history of the case.

"On an appeal from the denial of a § 2255 motion, we review a district court's conclusions of law *de novo* but will accept its factual findings unless they are clearly erroneous." *Sapia v. United States*, 433 F.3d 212, 216 (2d Cir. 2005). To establish ineffective assistance of counsel, Andrews must show both that "'counsel's representation fell below an objective standard of reasonableness'" and that "'there is a reasonable probability that, but for counsel's unprofessional errors, there result of the proceeding would have been different.'" *Forbes v.*

2

*United States*, 574 F.3d 101, 106 (2d Cir. 2009) (quoting *Strickland v. Washington*, 466 U.S. 668 (1984)).

If we conclude that a petitioner fails on one prong of *Strickland*'s two-part test, we need not address the other prong. *See, e.g., Palacios v. Burge*, 589 F.3d 556, 566 (2d Cir. 2009). The district court held both that Andrews's trial counsel's performance was objectively reasonable and that Andrews was not prejudiced by any purported error. We find it unnecessary to review the district court's performance inquiry because we are satisfied that it correctly held that Andrews was not prejudiced, and we will assume solely for purposes of this appeal that Andrews's trial counsel's performance fell below an objective standard of reasonableness when he failed to make any pretrial investigation of the apparently blank audiotape.

Andrews does not argue that he was prejudiced *at trial* by the admission of the audiotape, or contend that the outcome of the trial would have been different had counsel been aware of the contents of the tape sooner; his sole contention is that he would have pleaded guilty but for his attorney's error because he would have been aware of the overwhelming strength of the government's case. We have held that where a defendant's trial counsel fails to learn of "ruinous statements" made by his client after arrest, his subsequent failure to recommend a guilty plea may constitute ineffective assistance of counsel. *Boria v. Keane*, 99 F.3d 492, 497 (2d Cir. 1996).

In support of the § 2255 motion, Andrews's trial attorney supplied an affidavit stating that "[i]f the government had sent . . . the recorded conversation instead of the blank tape, [he] would have advised . . . Andrews to plead guilty and cooperate with the prosecution rather than go to trial." Koppelman Aff. at ¶5. Andrews, in turn, submitted an affidavit stating that he

3

"would have plead[ed] guilty and cooperated with the government rather than go to trial had [he] been advised to do so." Andrews Aff. at ¶3. To the extent that Andrews suggests that a cooperation agreement would have been possible, we agree with the district court that this possibility had been firmly foreclosed even before the MCC tape was turned over in discovery, as the government had listened to Andrews describe his conduct at a proffer session in 2001 and told his attorney at the conclusion of the session that it was "not interested" in negotiating such an agreement. *See* Gitner Aff. at ¶¶3-4. Although Andrews argues that the government might have been interested in a subsequent proffer pertaining to the shooting of the man known as "K-Born" – as opposed to the prostitution-related activities discussed at the proffer session – we cannot say that the district court committed clear error in finding that the government had firmly decided not to enter into a cooperation agreement with Andrews.[1] With the government's decision fixed, it is irrelevant that Andrews and his attorney might have wished to make a second attempt at a cooperation agreement had they known about the MCC tape sooner.

Both Andrews's affidavit and his trial counsel's affidavit indicate that their desire would have been to pursue a cooperation agreement. But the district court also stated that even if the affidavits were read to suggest that Andrews would have pursued a *non-cooperation* guilty plea had he known about the tape sooner, it would not find them credible. We detect no clear error in this finding either. Indeed, the district court's finding is supported by the record.

_____

[1] Like the district court, *see* Dist. Ct. Op. at 12 n.4, we are less than surprised that the government was uninterested in negotiating a cooperation agreement with Andrews, especially after (according to the Assistant United States Attorney who heard the proffer) Andrews explained at his proffer session that he beat the women whom he had intimidated into working for him as prostitutes because he believed they wanted him to do so, on the logic that he had warned them that he would beat them for disobedience and they had chosen to disobey him anyway, *see* Gitner Aff. at ¶3.

In some cases, a petitioner's affidavit stating that he would have accepted a plea deal absent an error by counsel, combined with a "'great disparity'" between possible sentencing outcomes, may provide sufficient evidence that a petitioner would have acted differently but for counsel's error. *See United States v. Gordon*, 156 F.3d 376, 380-81 (2d Cir. 1998). Relying on *Gordon*, Andrews contends that his affidavit and the disparity alone show that he would have accepted a plea offer had he known about the MCC tape. We are not persuaded. First, two months after the proffer session at which the government decided not to enter into cooperation negotiations, the government did send Andrews a draft plea agreement which contemplated a sentencing range of 151 to 188 months, considerably lower than the 352 months to which Andrews was ultimately sentenced, but Andrews rejected that offer. Second, in the same MCC phone call during which he made the self-inculpating statements underlying this motion, Andrews expressed a desire to pursue a strategy that would allow him to "get right out" of custody. MCC Tape Tr. at 4.

Given Andrews's demonstrated aversion to any deal that carried significant prison time, and the otherwise strong evidence against him, including the testimony of three cooperating witnesses – one of whom was with Andrews during the shooting of K-Born – we cannot say that the district court clearly erred in declining to credit his self-serving assertion that earlier knowledge of the MCC tape would have been the grain to tip the scales in favor of a decision to plead guilty. This is especially so because Andrews's trial counsel was aware of the content of the MCC tape no later than two weeks into the three-month trial, and yet the record contains no

5

suggestion that Andrews or his counsel made any effort to approach the government about a change of plea.[2]

In sum, the district court did not err in finding that Andrews would not have pleaded guilty even if he had known about the MCC tape well before trial, and he was therefore not prejudiced by any error of his attorney's. We have considered all of Andrews's other arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

---

[2] The existence of the tape cannot have been a surprise to Andrews personally, as he mentioned to his interlocutor during the MCC phone call that the call was being recorded. MCC Tape Tr. at 14. While Andrews's awareness of the tape would not excuse any error his attorney might have made, it is further reason to doubt his belated contentions that he went to trial unaware of the strength of the evidence against him.