**UNITED STATES of America,**

v.

**Daniel ENRIGHT, Appellant.**

**No. 99–5144.**

United States Court of Appeals, Third Circuit.

Argued March 7, 2002.

Filed April 18, 2002.

Christopher J. Christie, Newark, NJ, Robert E. Lindsay, Alan Hechtkopf, Karen Quesnel (Argued), John Hinton, III, United States Department of Justice, Washington, DC, for Appellee.

John J.E. Markham (Argued), Markham & Read, Boston, MA, for Appellant.

Before SCIRICA and COWEN, Circuit Judges, RESTANI,* Judge, United States Court of International Trade.

* Honorable Jane A. Restani, Judge, United States Court of International Trade, sitting by designation.

## OPINION

COWEN, Circuit Judge.

Daniel Enright was found guilty of violating 18 U.S.C. § 371 by conspiring to defraud the United States, to commit tax evasion (in violation of 26 U.S.C. § 7201), commit wire fraud on the State of New Jersey (in violation of 18 U.S.C. § 1343), and to commit money laundering (in violation of 18 U.S.C. § 1957). He was also convicted of fourteen counts of attempting to evade excise taxes (in violation of 26 U.S.C. § 7201), eleven counts of wire fraud (in violation of 18 U.S.C. § 1343), eleven counts of money laundering (in violation of 18 U.S.C. § 1957), and one count of evading currency reporting requirements (in violation of 31 U.S.C. §§ 5316, 5322). Enright was sentenced to 200 months, and ordered to pay $1,000,000 in restitution. He challenges the sufficiency of the evidence to support his conviction, some of the District Court's evidentiary rulings and jury instructions, as well as his sentence. He also asserts that the District Court improperly allowed an amendment to or variance from the terms of the indictment. We will affirm.

### I.

Enright and his coconspirators participated in a "daisy chain" scheme to evade excise taxes on the sale of certain kinds of fuel. The elements of such schemes have been detailed sufficiently elsewhere. *See, e.g., United States v. Morelli,* 169 F.3d 798, 801 (3d Cir.1999), *cert. denied,* 528 U.S. 820, 120 S.Ct. 63, 145 L.Ed.2d 54 (1999) (citations omitted). During the prosecution period, Enright operated as the president of Petro Plus Oil ("Petro-Plus"), a company that bought and sold

fuel at the bottom of the chain. We will add further factual detail below as it becomes necessary to the legal discussion.

Enright was convicted of a multiple-object conspiracy contained in Count One of the Superseding Indictment, along with multiple counts of tax evasion, wire fraud, money laundering, and evading currency reporting requirements.

## II.

### A. Sufficiency of the Evidence PetroPlus Was The Taxpayer

■ Enright argues that because PetroPlus was not the federal or New Jersey state excise taxpayer, the evasion counts should have been dismissed. When reviewing the sufficiency of the evidence to sustain a conviction, we must ask whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt, viewing the evidence in the light most favorable to the government. *See United States v. Veksler*, 62 F.3d 544, 551 (3d Cir.1995) (citations omitted).

We are satisfied that a rational finder of fact could conclude beyond a reasonable doubt that the government met its burden of proof. A jury could rationally conclude that PetroPlus was responsible for the unpaid federal and New Jersey State excise taxes. The record is replete with evidence of an agreement between Enright and his coconspirators whereby Kings would purchase number 2 oil from a major fuel supplier in a tax-free transaction to be delivered to PetroPlus in subsequent transactions without the taxes ever being paid. This involved an elaborate and complex daisy chain involving fictitious paper sales of the fuel to make it appear that a sham company above PetroPlus in the chain had actually incurred and paid the taxes on the sale of the number 2 oil, when

in fact the taxes had not been payed. The record also reflects that PetroPlus then sold the oil at prices that purported to include the federal and New Jersey state excise taxes, when in reality as well known to Enright the taxes had never been payed. The record reflects numerous other examples from the paper trail of the daisy chain.

The jury considered and rejected Enright's claim that PetroPlus did not incur the tax liability. The District Court specifically instructed the jury that, in determining whether the government had proven the attempted evasion of tax charged in the indictment beyond a reasonable doubt, the "first question for you to determine is whether a tax was due and owing from PetroPlus to the United States." App. at 614. It is apparent from the voluminous record that the trial provided overwhelming evidence from which a rational jury could find beyond a reasonable doubt that PetroPlus incurred the taxes.

### B. Jury Instructions

■ Enright argues that the District Court improperly charged the jury on knowingly and willfully. He cites no legal authority in his two-paragraph analysis on this issue. "We will reverse the [D]istrict [C]ourt's denial to charge a specific jury instruction only when the requested instruction was correct, not substantially covered by the instructions given, and was so consequential that the refusal to give the instruction was prejudicial to the defendant." *United States v. Phillips*, 959 F.2d 1187, 1191 (3d Cir.1992). Our review of whether the District Court stated the appropriate legal standards in its charge is plenary. *United States v. Johnstone*, 107 F.3d 200, 204 (3d Cir.1997). The jury charge must clearly articulate the legal standards at issue and be structured to

avoid confusion, and we examine the charge in its entirety. *Id.*

The District Court charged the jury as follows:

The word "willfully," as used in section 7201, means a voluntary, intentional violation of a known legal duty. Under section 7201, a defendant has a legal duty not to act to evade a tax obligation. Thus, to find a defendant guilty, you must find that the Government has proven that he or she acted voluntarily and intentionally and with the specific intent to keep from the Government a tax imposed by the tax laws that a defendant knew there was a legal duty to pay. An act is done "knowingly" only if it is done purposely and deliberately and not because of mistake, accident, negligence, or other innocent reason.

Although, as I previously instructed, you must find beyond a reasonable doubt that PetroPlus owed unpaid taxes, it is not required that you find a particular defendant knew who was the proper taxpayer. However, you must find beyond a reasonable doubt that a defendant acted voluntarily and intentionally and with the specific intent to keep from the Government a tax imposed by law that a defendant knew there was a legal duty to pay.

App. at 617. Enright is incorrect in his assertion that the government had to prove that Enright knew that PetroPlus owed the taxes at issue. *See United States v. Voigt,* 89 F.3d 1050, 1089–90 (3d Cir.1996); *United States v. Wisenbaker,* 14 F.3d 1022, 1024–25 (5th Cir.1994). Among other things, what the government had to prove was that PetroPlus was the taxpayer, not that Enright knew that PetroPlus was the taxpayer. Read in its entirety, the District Court properly charged the jury.

▮ Enright also argues that the following instruction was tantamount to a directed verdict:

If, in good faith, a defendant believed that he or she was not violating the Internal Revenue laws, then such defendant cannot be guilty of tax evasion.

. . .

The test is whether a defendant personally believed in good faith that all properly reportable excise taxes due under the Internal Revenue Code had been reported and paid.

App. at 620–21. Reviewing the charge in its entirety, we find no error with the instruction. As discussed above, the government did not need to prove that Enright (or any of his coconspirators) knew the identity of the taxpayer in order to establish willfulness. The belief that someone other than PetroPlus owed the taxes did not constitute a defense to the crimes charged in the superseding indictment.

Enright also challenges the District Court's instruction on sham transactions. The District Court gave the following instruction on sham transactions:

[I]t is not lawful for parties to conduct transactions which, rather than having any business purpose or economic substance, are conducted solely for the purpose of evading taxes. Therefore, where a transaction is found to have been conducted for the sole purpose of evading tax liability, the Internal Revenue Service is permitted to ignore or reject the form of that transaction, and look instead at its economic reality for purposes of imposing the proper tax on the appropriate party or parties.

App. at 623. Having read the charge to the jury in its entirety, we find no error with the instruction. *See United States v. Wexler,* 31 F.3d 117, 122 (3d Cir.1994).

## C. Sufficiency of the Evidence Enright Acted Willfully

■ Enright challenges the sufficiency of the evidence adduced at trial that he acted willfully. We must ask whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt, viewing the evidence in the light most favorable to the government. *See Veksler,* 62 F.3d at 551 (citations omitted).

Enright asserts that to show willfulness, the government had to prove that he knew PetroPlus owed the taxes due on the fuel sales at issue. We disagree with such a theory of the case. Willfulness may be inferred. *See Voigt,* 89 F.3d at 1090. There is ample evidence in the record from which a reasonable jury could infer that Enright acted willfully to evade the taxes. Whether he knew who the ultimate taxpayer should have been is irrelevant. Enright testified that he knew the taxes had not been payed. App. at 621. To further and conceal the tax evasion, Enright and his coconspirators made false entries and alterations in the books and records of the companies involved in the daisy chain, created false invoices and documents, destroyed relevant records, concealed assets, and covered up sources of income. *See, e.g., Spies v. United States,* 317 U.S. 492, 499, 63 S.Ct. 364, 368, 87 L.Ed. 418 (1943); *United States v. Ashfield,* 735 F.2d 101, 105 (3d Cir.1984). Numerous deceptions exist in the record, along with evidence of Enright's vast experience and tenure in the oil business. We will not disturb the jury's finding of willfulness.

## D. Constructive Amendment and Variance Issues

■ Enright argues that the District Court should have acquitted him on the conspiracy and evasion counts because the District Court permitted the government to constructively ·amend the indictment during trial, a per se reversible error. *Stirone v. United States,* 361 U.S. 212, 215–17, 80 S.Ct. 270, 272–73, 4 L.Ed.2d 252 (1960). In the alternative he argues that the proof adduced at trial varied from the allegations in the superseding indictment such that it would constitute a reversible error. A variance constitutes reversible error only if Enright were prejudiced by the variance. *See United States v. Perez,* 280 F.3d 318, 346 (3d Cir.2002). We reject both of Enright's theories because they are based on the same misreading of the superseding indictment.

Enright takes issue with wording found in the superseding indictment in the conspiracy count and all of the evasion counts: "knowingly, willfully, and unlawfully evaded and defeated the federal excise taxes due and owing from PetroPlus to the United States." (Counts 1, 24–37) (emphasis added). Enright contends that the superseding indictment charged him only with owing taxes due and owing from PetroPlus, and that at trial there was no proof that the transactions above PetroPlus in the daisy chain were sham transactions or that PetroPlus was responsible for the taxes. In other words, the government failed to meet its burden of proof that PetroPlus (as opposed to other companies involved in earlier transactions in the daisy chain) owed the taxes. According to Enright, this constituted a constructive amendment or variance. We do not agree with Enright's restrictive reading of the superseding indictment.

In *United States v. Wisenbaker,* the Fifth Circuit was confronted with an almost identical fact pattern. 14 F.3d 1022 (5th Cir.1994). The defendant alleged that the indictment charged only him with tax evasion, but that the proof adduced at trial that he had assisted others, namely his customers, in evading their taxes constitut-

ed an amendment or variance. *Id.* at 1026. The indictment at issue in *Wisenbaker* read:

[T]he defendant Houston M. Wisenbaker, Jr., did knowingly, willfully, and unlawfully attempt to evade and defeat federal excise taxes ... by making and causing to be made false invoices; by using numerous entities to conceal the purchase of tax-free diesel fuel; by dealing in currency and cashier's checks; by failing to make a Quarterly Excise Tax Return, Form 720, ... as required by law, with any proper officer of the Internal Revenue Service; and by other means.

*Id.* The Court of Appeals for the Fifth Circuit did "not find the language of the indictment susceptible to the restrictive reading [the defendant] wishe[d] to impose on [the Court]." *Id.* at 1027. As the Court explained, "[t]he indictment contains no terms restricting it to an allegation that Wisenbaker failed to pay his own taxes. It fairly encompasses the government's theory that Wisenbaker also violated I.R.C. § 7201 by evading any taxes his customers owed but did not pay because of Wisenbaker's false assurances that he had already paid the taxes." *Id.* (emphasis added).

As in *Wisenbaker*, each of the counts at issue (1 and 24–37) in the superseding indictment contains the phrase, "... the defendants ... and others ... did knowingly, wilfully, and unlawfully attempt to evade and defeat and aided, abetted, counseled, commanded, induced and procured and caused the evasion and defeat of federal excise taxes ... due and owing from PetroPlus, Inc." App. at 248, 300, 302, 304, 306, 308, 310, 312–21, 323, 325, 327. What Enright fails to consider is that each count, read as a whole, "fairly encompasses" the government's theory that PetroPlus was the taxpayer, and the government did not

have to prove that Enright knew that PetroPlus owed the taxes. *Wisenbaker*, 14 F.3d at 1027.

The superseding indictment is 98 pages long. App. at 236–334. It devotes 37 paragraphs to the general terms of the daisy chain scheme and all of the individuals involved. App. at 236–45. The Introduction is incorporated into the first paragraph of every count. The conspiracy count contained in Count One of the superseding indictment consists of 32 pages (143 paragraphs), detailing the acts and individuals. App. at 246–78. The tax-evasion counts span 28 pages, and are likewise filled with detailed descriptions of the individuals and their acts. App. at 300–28. Reviewed in its entirety, we can say with confidence that the superseding indictment "fairly encompasses" the government's theory that PetroPlus was the taxpayer, and Enright was properly and fairly put on notice of this allegation. All of the same arguments can be made with regard to PetroPlus as the "State of New Jersey" taxpayer, as well. As discussed above, the government did not have to prove that Enright knew that PetroPlus owed the state taxes. The indictment sufficiently informed Enright of the charges against him so as to put him on notice to prepare his defense. The evidence adduced at trial constituted neither a variance from nor an amendment of the terms of the superseding indictment.

## E. Sentencing

■ Enright raises several sentencing errors. We review a District Court's factual determinations underlying the application of the sentencing guidelines for clear error and exercise plenary review over legal questions involving the proper interpretation and application of the sentencing guidelines. *United States v. Helbling*, 209 F.3d 226, 242–43 (3d Cir.2000), *cert. de-*

*nied,* 531 U.S. 1100, 121 S.Ct. 833, 148 L.Ed.2d 715 (2001); 18 U.S.C. § 3742(e).

Enright adopts the argument of his co-Appellant, Erlikh, that the state misdemeanor conduct involved in this case did not fall near the heartland of the conduct covered by the laundering statutes. He argues that the conduct fell outside the "heartland" of money laundering, and, therefore, the District Court erred by using the money laundering guideline in calculating his sentence. Enright asserts that the District Court should have used the tax evasion guideline instead of the money laundering guideline. We do not agree. The record demonstrates that Enright was involved in an elaborate, systematic scheme to defraud. Money derived from the scheme was used to keep the daisy chain going and the links in the chain were established to avoid detection by authorities. See generally *Morelli,* 169 F.3d at 805–809. This amounted to a crime of significant duration and marked severity. The total loss to the State of New Jersey on account of the daisy chain scheme was over 11 million dollars. The daisy chain constitutes serious criminal activity and is the conduct Congress sought to prevent when it proscribed money laundering. There was nothing "atypical" about Enright's conduct that would justify the District Court not using the money laundering guidelines. See *United States v. Chilingirian,* 280 F.3d 704, 713–14 (6th Cir.2002).

■ Enright challenges the District Court's use of the 1998 Sentencing Guidelines to calculate his sentence. His argument, which consists of one paragraph in his brief and cites no authority, *see* Fed. R.App. P. 28(a)(9)(A) (explaining that Appellant's brief must contain the legal authorities and citations to the record upon which Appellant relies), is that the 1993 version of the Guidelines should have been used because the last tax evasion charge took place in June of 1993. The Guidelines themselves state that a court should use the "Guidelines Manual in effect on the date that the defendant is sentenced" unless there is an ex post facto concern. U.S.S.G. §§ 1B1.11(a), 1B1.11(b)(1). The Guidelines also state that "[i]f the defendant is convicted of two offenses, the first committed before, and the second after, a revised edition of the Guidelines Manual became effective, the revised edition of the Guidelines Manual is to be applied to both offenses." U.S.S.G. § 1B1.11(3). Enright alleges no ex post facto concern, and despite his assertions to the contrary, the record reveals that Enright's tax offenses were not completed until after the effective date of the November 1993 revisions to the Guidelines. We find no error.

■ Enright contends that his sentence "double counts" because the District Court improperly treated the federal tax evasion scheme as a separate group from the wire-fraud and money laundering activity. By grouping the offenses into these two groups, the District Court was able to add another two levels to the total offense level. Enright argues that the District Court should have grouped the tax evasion with his wire fraud and money laundering offenses, and then should have sentenced him under the tax evasion guidelines.

The District Court did not err in its grouping decision. Under U.S.S.G. § 1B1.1(a), the District Court had to first determine the base offense level for each count. Because multiple counts were involved, the District Court had to group "closely related" counts together to determine a single offense level. U.S.S.G. § 1B1.1(d). In the case of a multiple-object conspiracy, each object offense is treated as a count of conviction. U.S.S.G. §§ 1B1.2(d), 3D1.2, comment. (n. 8). In grouping "closely related" counts, the District Court must group those counts to-

gether that involve "substantially the same harm," meaning "[w]hen the offense level is determined largely on the basis of the total amount of harm or loss ... or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior." U.S.S.G. § 3D1.2 (d). The tax evasion guideline bases the offense level on the amount of money involved, while the guideline for money laundering does not. *See, e.g., United States v. Napoli,* 179 F.3d 1, 10 (2d Cir. 1999), *cert. denied,* 528 U.S. 1162, 120 S.Ct. 1176, 145 L.Ed.2d 1084 (2000); *United States v. Johnson,* 971 F.2d 562, 576 (10th Cir.1992). As for wire fraud, it has been found to be a crime that is "distinct from [its] underlying predicate acts and purposes and involve[s] additional harms." *See United States v. Helmsley,* 941 F.2d 71, 101 (2d Cir.1991). Another difference to note is the ongoing and continuous nature of the money laundering and wire fraud offenses. More . distinctions exist that we need not enumerate. The District Court did not err when it determined that the tax evasion offenses did not involve substantially the same harm as the money laundering and wire fraud convictions.

■ Enright argues that the District Court erred by not awarding him a downward departure for acceptance of responsibility. Section 3E1.1(a) permits a district court to reduce a defendant's offense level by two points if the district court finds that "the defendant clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). Application Note 2 provides that the adjustment is not intended to "apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." U.S.S.G. § 3E1.1, comment. (n. 2). The

record is clear that Enright did not demonstrate acceptance of responsibility. The trial lasted nine and a half months, and put the government to its burden. Enright never admitted his guilt, denied any knowledge of the inner workings of the daisy scheme, and continues to deny his criminal intent to this day. The District Court gave Enright an enhancement for obstruction of justice, which according to the guidelines themselves is an indication that a defendant has not accepted responsibility for his criminal conduct. U.S.S.G. § 3E1.1 comment. (n. 4). Such events led the District Court to characterize Enright's behavior as "the dead opposite of acceptance of responsibility. It is the nonacceptance of responsibility." App. at 2647. We find no error in the District Court's refusal to grant Enright a reduction for acceptance of responsibility.

■ Enright also challenges the District Court's enhancement for obstruction of justice. A District Court should enhance a defendant's offense level by two if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense." U.S.S.G. § 3C1.1. The record is clear Enright used offshore accounts to conceal funds and information from the I.R.S., and that Enright knew of the federal investigation into the daisy chain scheme while he used the offshore accounts. Other examples of Enright's efforts to avoid detection exist in the record as well. Enright has no authority for his proposition that the District Court was wrong to base its obstruction of justice enhancement on the overseas account because conduct cannot be both part of the offense charged and the basis of an enhancement. Enright is also without authority for his argument that because the District Court imposed a two-

point increase for a sophisticated act of concealment, it was in error for the District Court to also give an enhancement for obstruction of justice. We find no error with the District Court's enhancement for obstruction of justice.

Enright contends that the District Court impermissibly exceeded the 6–12 month sentence that would result from U.S.S.G. § 2S1.3 when it imposed a sentence of 100 months for Count 39 of the superseding indictment. Enright cites no authority in his one-paragraph argument on this issue, and we fail to see the point of his argument. The District Court calculated Enright's combined offense level at 36, and determined that his criminal history category was I. The Guideline range was 188–235, and the District Court determined that the appropriate total term of imprisonment was 200 months. In accordance with § 5G1.2(d), the District Court distributed the 200–month sentence over the multiple convictions, several of which (including Count 39) authorized confinement for up to 120 months. See 31 U.S.C. §§ 5316(a), 5322(b). We find no error.

### III.

We have thoroughly reviewed all the arguments presented by Defendant in his submissions to this Court, and those presented at oral argument, and find no basis to disturb the multiple convictions or the sentence imposed by the District Court. The judgment of conviction entered February 16, 1999 will hereby be affirmed.