Daniel **ENRIGHT**, Petitioner,

v.

**UNITED STATES of America,**
**Respondent.**

**Civil Action No. 03–5640 (JEI).**

United States District Court,
D. New Jersey.

Dec. 10, 2004.

**161**

## I.

Daniel Enright was convicted on June 19, 1998, after a nine and a half month trial, of one court of conspiracy to defraud the United States, commit tax evasion, wire fraud and money laundering in violation of 18 U.S.C. § 371; fourteen counts of excise tax evasion in violation of 26 U.S.C. § 7201; eleven counts of wire fraud in violation of 18 U.S.C. § 1343; ten counts of money laundering in violation of 18 U.S.C. § 1957, and one count of evading currency reporting requirements in violation of 31 U.S.C. § 5316(a). On February 10, 1999, he was sentenced by this Court to a period of 200 months of incarceration.

The voluminous evidence presented against Enright at trial established that he and his co-conspirators took part in a "daisy chain" scheme to evade over $132,000,000 in federal excise taxes on the sale of motor fuels. Enright was the president of PetroPlus, a small distributor of motor fuels. Enright and his co-conspirators took advantage of the tax-paid fuels market, in which wholesale fuel distributors holding valid Internal Revenue Service Registrations for Tax–Free Transactions ("Form 637") are permitted to make tax-free sales and purchases from other Form 637 holders. The last wholesaler in the distribution chain with a Form 637 was responsible for the payment of the excise tax. The cost of the tax was usually passed on to the companies that are the final buyers of the fuel.[1]

Enright and his co-conspirators set up a series of false middlemen and sham transactions to make it appear that PetroPlus was purchasing fuel with the taxes included in the sales price. In reality, PetroPlus was buying fuel directly from Kings Motor Oils ("Kings") without the taxes being paid

Himelman, Wertheim & Geller by David B, Himelman, Old Bridge, NJ, for Petitioner.

Markham & Read by John J.E. Markham, II, Boston, MA, for Petitioner.

Christopher J. Christie, United States Attorney by Stephen Ponticiello, Special Assistant United States Attorney, Thomas P. Ott, Special Assistant United States Attorney, Newark, NJ, for Respondent.

## OPINION

IRENAS, Senior District Judge.

Currently before the Court is Petitioner's application for writ of habeas corpus filed pursuant to 28 U.S.C. § 2255. Petitioner argues that his sentence should be vacated and corrected because he was denied his Sixth Amendment right to effective assistance of counsel in violation of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). For the reasons set forth below, the Petitioner's application is denied.

---

1. Changes to New Jersey law have since eliminated the tax-paid fuels market.

by either company. Kings, a Form 637 holder, made paper sales without taxes being paid to middle companies, some of which were legitimate business with valid Form 637s and some were little more than an address, fax and phone number. These false transactions often went through several layers of middle companies in order to obscure which company was responsible for payment of the excise taxes. One shell company was always positioned between Kings and PetroPlus as the "burn" company, and any sales before it in the chain were invoiced as tax-unpaid, whereas any sales after it (i.e. to PetroPlus) were invoiced as tax-paid. As a result, Kings and PetroPlus were always several degrees removed from the sale that on paper triggered the obligation to pay taxes.

Enright and his co-conspirators concealed this scheme through elaborate measures. Kings and PetroPlus communicated using cellular phones purchased and activated in the names of other companies. False invoices reflected sales of tax-exempt home heating oil until the sales passed through the "burn" company, after which they indicated sales of tax-paid motor fuel. Payments for the fuel were sometimes made through third parties, and sham companies outside the daisy chain were set up to be the conduits for those payments. The conspirators filled out the chain between Kings and PetroPlus with sham satellite offices of legitimate retail fuel suppliers as well as least eight shell companies holding an invalid or stolen Form 637.

From the beginning of the grand jury's investigation in this case in 1993, Enright was personally represented by Creed Black, Esq., while Peter Bennett, Esq., was counsel to PetroPlus. After the indictment was returned on August 3, 1995, Black and Bennett represented Enright as co-counsel for approximately one year. In the summer of 1996, Enright decided that Bennett's firm would represent him during the criminal trial.

At trial, Enright's defense was based on creating reasonable doubt as to whether PetroPlus was in fact the taxpayer or that Enright had the requisite willfulness because he did not know PetroPlus was the taxpayer. Additionally, Bennett repeatedly and unsuccessfully argued that the government was required to prove that Enright knew that PetroPlus was the company responsible for paying the excise taxes, pursuing jury instructions to this effect. The trial culminated with Enright's admission, on the stand, that he knew that the excise taxes were not being paid for the fuel PetroPlus purchased. (R. at 13396–13419.)[2] This Court characterized such testimony as "shocking," and noted that Enright had "flat out admitted" his guilt. (Sent.Hearing, Oct. 14, 1998, p. 21.)

Enright appealed his conviction to the Third Circuit Court of Appeals. The essence of Enright's appeal was a challenge to this Court's rulings that the government needed to prove only that PetroPlus was the taxpayer, and not that Enright knew PetroPlus owed taxes that were being evaded. Enright specifically contested the charge given to the jury regarding willfulness and the government's burden of proof. In affirming this Court's instructions, the Third Circuit stated that "what the government had to prove was that PetroPlus was the taxpayer, *not that Enright knew that PetroPlus was the taxpayer.*" *United States v. Enright,* 46 Fed. Appx. 66, 70, 2002 WL 826442 (3d Cir. 2002). The Third Circuit also held that the evidence was sufficient for the jury to conclude that Enright had acted willfully.

---

**2.** "R." refers to the specific page or pages in the trial record.

*Id.* at 71, 2002 WL 826442. It noted again that it disagreed with Enright's theory of the case that the government was required to prove that he knew PetroPlus was responsible for the payment of excise taxes, and held that willfulness may be inferred from Enright's actions. *Id.*[3]

The Supreme Court denied certiorari on December 2, 2002. *Enright v. United States,* 537 U.S. 1044, 123 S.Ct. 660, 154 L.Ed.2d 516 (2002)(mem.). Enright filed this petition for habeas corpus in the District of New Jersey on November 26, 2003.

## II.

Petitioner brings this motion pursuant to 28 U.S.C. § 2255. Section 2255 provides, in pertinent part, that:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255 (2000). Thus, Petitioner is entitled to relief only if he can establish that he is in custody in violation of federal law or the Constitution.

A district court is given discretion in determining whether to hold an evidentiary hearing on a habeas petition under Section 2255. *See Government of the Virgin Islands v. Forte,* 865 F.2d 59, 62 (3d Cir.1989). In exercising that discretion, the court must first determine whether the petitioner's claims, if proven, would entitle him to relief, and then consider whether an evidentiary hearing is needed to determine the truth of the allegations. *See Government of the Virgin Islands v. Weatherwax,* 20 F.3d 572, 574 (3d Cir.1994). Accordingly, a district court may summarily dismiss a motion brought under Section 2255 without a hearing where the "motion, files, and records, 'show conclusively that the movant is not entitled to relief.'" *United States v. Nahodil,* 36 F.3d 323, 326 (3d Cir.1994) (quoting *United States v. Day,* 969 F.2d 39, 41–42 (3d Cir.1992)); *Forte,* 865 F.2d at 62.

Enright alleges that he was provided ineffective assistance of counsel by his trial attorney Peter Bennett, in violation of the Sixth Amendment. Specifically, Enright contends that Bennett wrongly advised him as to what the government was required to prove in order for the jury to convict him of tax evasion. He alleges that Bennett advised him that the government must prove that Enright knew that PetroPlus was responsible for the payment of excise taxes on its purchases, a legal position that was rejected by this Court and the Third Circuit. As a result of this erroneous advice, Enright alleges that he rejected a plea overture from the government because he believed he was innocent, or rather, that the government could not prove he knew PetroPlus owed the excise taxes because he claims he did not know PetroPlus was the taxpayer.

---

**3.** Enright also raised two additional issues on appeal which are not directly relevant to his habeas petition. First, he argued that this Court improperly allowed the government to constructively amend the indictment during trial. Alternatively, Enright contended that the government's proof at trial varied from the allegations of the superseding indictment to such a degree that he was prejudiced by the variance. Next, he alleged that this Court made several errors in sentencing. The Third Circuit rejected these claims. *Enright,* 46 Fed.Appx. at 71–74.

For the reasons outlined below, the Court finds that an evidentiary hearing is not necessary because the evidence in the record conclusively demonstrates that Enright is not entitled to the relief sought.

## III.

The Supreme Court has long recognized that the Sixth Amendment right to counsel exists in order to protect a defendant's fundamental right to a fair trial. *Strickland v. Washington*, 466 U.S. 668, 684–85, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This right to counsel includes within it the right to *effective assistance* of counsel. *Id.* at 686, 104 S.Ct. 2052; *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). In *Strickland*, the Court held that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686, 104 S.Ct. 2052. *See also Rompilla v. Horn*, 355 F.3d 233, 246 (3d Cir.2004).

■ A convicted defendant seeking to have his conviction or sentence vacated due to the incompetence of counsel must show that his counsel's performance was deficient and that he was prejudiced by the deficiency. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. The first prong of this test requires a habeas petitioner to demonstrate that his lawyer "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," such that counsel's representation fell below an objective standard of reasonableness. *Id.* Second, the petitioner must show that but for counsel's errors, there is a reasonable probability that the result of the trial would have been different. *Id.* at 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

■ The Third Circuit has held that a habeas petitioner states a claim under the Sixth Amendment when he contends that the advice he received from counsel regarding a plea bargain was so insufficient or incorrect as to undermine his ability to make an intelligent decision whether to accept the plea offer. *United States v. Day*, 969 F.2d 39, 43 (3d Cir.1992) (stating that "a defendant has the right to make a reasonably informed decision whether to accept a plea offer"); *United States v. Barber*, 808 F.Supp. 361, 378 (D.N.J.1992). *See also Hill v. Lockhart*, 474 U.S. 52, 56–57, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (voluntariness of guilty plea depends on adequacy of counsel's advice); Anthony G. Amsterdam, *Trial Manual 5 for the Defense of Criminal Cases* 201 (1988) ("counsel may and *must* give the client the benefit of counsel's professional advice on this crucial decision [whether to plead guilty]"). A subsequent fair trial does not remedy counsel's incompetence at the plea bargaining stage. *Day*, 969 F.2d at 44–45.

■ A court reviewing a habeas petitioner's claim of ineffective assistance of counsel need not determine whether counsel's performance fell below an objective standard of reasonableness before addressing whether the defendant was prejudiced by counsel's errors. *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.* As such, the Court will first address whether Enright was prejudiced by Bennett's alleged misrepresentation of the law regarding willfulness.

## A.

■■ In the context of claims regarding the assistance of counsel at the plea bargaining stage where a defendant eventually proceeded to trial, a habeas petitioner must establish three components in order to demonstrate prejudice. He must prove that a plea offer was extended by the government, and that a reasonable probability exists that he would have accepted the plea offer and the court would have approved the agreement. *Day*, 969 F.2d at 44–45. *See also United States v. Pungitore*, 15 F.Supp.2d 705, 733 (E.D.Pa. 1998); *Barber*, 808 F.Supp. at 378.

It is undisputed that there was no formal plea offer extended by the government. On December 9, 1995, Bennett and Assistant United States Attorney Robert G. Stahl had a phone discussion regarding several matters in Enright's case. At the end of the conversation, Bennett asked Stahl to give a sentencing range for a possible plea agreement. Stahl suggested seven or eight years, and Bennett replied that he did not think that Enright would accept such a long sentence. The following day, Bennett communicated the substance of his conversation with Stahl to Enright. Government's Mem. of Law in Opp., Exs. A, B, C.

The short discussion that occurred between Bennett and Stahl was not sufficient to satisfy *Day*. Although a sentencing range was briefly discussed, no specific offer was made even informally, nor did the attorneys discuss the details of the charges Enright would plead to or the facts to which he would allocute. It would be a closer question if the plea discussions had advanced to a more formal stage, yet still short of a written offer, but the brief conversation between the attorneys was no more than perfunctory.[4]

Even if a formal plea offer had been made, Enright cannot demonstrate that there was even a reasonable probability he would have accepted. Contrary to Enright's assertion in his habeas petition, his trial defense was not solely based on the question of willfulness. Enright's defense had two main contentions. First, he maintained that Petroplus was not *in fact* the taxpayer. Second, he contended that in any event he did not know that Petroplus was the taxpayer. *Even if* Bennett had advised Enright that the government was not required to prove that he knew that Petroplus was the taxpayer, the first prong of his defense remained in force.

The Court cannot assume that Bennett's mistaken advice was the crucial factor in Enright's decision, even if we accepted Enright's argument that Bennett was objectively unreasonable in advising him that the government had to establish that he knew Petroplus was the taxpayer. Enright was aware of the ample evidence from which the jury could *infer* that he knew that Petroplus was the tax-payer. A significant portion of the government's was intended to prove that Kings sold the tax-paid fuel directly to Petroplus, and that the intervening transactions were shams devised by Enright and his co-conspirators.

The jury could easily have inferred that Enright knew PetroPlus owed taxes on the fuel sales from the significant efforts he was privy to or undertook to conceal the

---

4. Enright's reliance on the Second Circuit's decision in *United States v. Gordon*, 156 F.3d 376 (2d Cir.1998) is inapposite. The Second Circuit has not adopted the *Day* formula for assessing prejudice in the context of ineffective assistance of counsel claims arising from plea bargaining. Therefore, the *Gordon* Court's holding that it was irrelevant whether a formal plea offer had been made is not instructive in a circuit where the existence of a formal plea offer has been held to be relevant. *See Day*, 969 F.2d at 44–45.

tax evasion, including that he and his co-conspirators "made false entries and alterations in the books and records of the companies involved in the daisy chain, created false invoices and documents, destroyed relevant records, concealed assets, and covered up sources of income." *Enright*, 46 Fed.Appx. at 71. Enright's suggestion that his decision whether to pursue a plea bargain was determined solely by counsel's mischaracterization of the government's burden and his personal belief that he did not know that PetroPlus was the tax-payer is not credible in light of the overwhelming evidence against him.

The Third Circuit has not affirmatively adopted or rejected an objective evidence requirement for demonstrating that a habeas petitioner would have accepted a plea offer, but it is clear that something more than a bare allegation is required. *See Barber*, 808 F.Supp. at 378; *Day*, 969 F.2d at 45–46. Enright has offered nothing more than a statement that he would have pled guilty. To the contrary, however, is his statement to Bennett that he would not plead guilty in exchange for only a six-month sentence and his refusal to authorize further plea discussions with the government. Government's Mem. of Law. in Opp., Ex. B, ¶ 6.

It is also evident that Enright could not have sufficiently allocuted to the facts of the indictment so that this Court could accept the plea arrangement. In his declaration supporting his habeas petition, Enright still does not accept or acknowledge the significant evidence of his involvement in a conspiracy to evade taxes. He admits only to taking advantage of other parties' willingness to evade taxes, so that he and his company could profit.

Decl. of D. Enright, ¶¶ 15–16. He does not acknowledge the existence of the "daisy chain" and continues to maintain that the transactions separating Kings and PetroPlus were not shams designed to blur the issue of tax liability. *See* Decl. of D. Enright, ¶ 5. Without Enright allocating to more than being just an unscrupulous businessman, this Court would not have accepted a plea bargain.

### B.

The standard for determining deficient performance is whether counsel's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052. Courts must be "highly deferential" to counsel's reasonable strategic decisions. *Id.* at 689, 104 S.Ct. 2052; *Marshall v. Hendricks*, 307 F.3d 36, 85 (3d Cir.2002). "Thus, the court is not engaging in a prophylactic exercise to guarantee each defendant a perfect trial with optimally proficient counsel, but rather to guarantee each defendant a fair trial, with constitutionally competent counsel .... the mere existence of alternative— even preferable or more effective—strategies does not satisfy the requirements of demonstrating ineffectiveness under *Strickland*." *Marshall*, 307 F.3d at 85–86.

Enright argues that his counsel's performance was objectively unreasonable because Bennett incorrectly advised him as to the government's burden of proof regarding his willfulness. Enright alleges that Bennett told him that the government must prove Enright knew PetroPlus was responsible for paying the taxes owed on the fuel purchases, and that such advice was "simply wrong."[5] Enright's Mem. of Law at 10. However, it appears that En-

---

**5.** The Court notes that "pursuit of a legally barred defense is not *per se* deficient performance." *Sams v. United States*, No. CR 95–012, 1999 WL 680008, *4 (D.D.C. July 29, 1999). *See also United States v. Agnes*, Civ. No. 86–5367, 1987 WL 7398, *9 (E.D.Pa., March 3, 1987).

right's belief that the government needed to prove that he knew PetroPlus was the taxpayer *predates* any advice given to him by Bennett, and in fact, predates Bennett's involvement in his case. Additionally, Enright has not alleged that Bennett's supposed mistake of law was due to a lack of investigation or diligence on counsel's part.

Enright's suggestion that he believed that the government needed to prove he knew that PetroPlus was the taxpayer as a result of advice he received from Bennett is simply not credible. The evidence shows that Enright was concerned with the issue of willfulness with regard to his transactions in the tax-paid fuels market prior to his indictment and trial. *See, e.g.* Government Trial Exs. DE–X–2 (Enright's notes from Nov. 24, 1989, conversation with Lou Savino), DE–X–5 (Enright's notes from Dec. 14, 1989, conversation with Steve Picco), DE–X–7 (Draft opinion letter dated March 8, 1990, from Kenneth Mack to Enright), DE–X–8 (Enright's notes from March 9, 1990, on Mack letter), DE–X–9 (Second draft opinion letter dated March 12, 1990, from Kenneth Mack to Enright), and DE–X–10 (Enright's notes from April 2, 1990, on second Mack letter).

In several discussions with attorneys from the firm Picco, Mack, Kennedy, Jaffe, Perrella & Yoskin in late 1989 and early 1990, Enright pushed his lawyers to clarify the meaning of having "reason to know" that taxes were being evaded in a way that would provide cover for his activities. The firm submitted several draft opinion letters regarding PetroPlus' possible criminal and civil liability for its tax-paid fuels business. Enright repeatedly requested edits that would make it appear that he was advised that actual knowledge was required, or at the very least, was given a very narrow definition of "reason to know." At one point, Enright's handwritten notes indicate that the firm's advice on

this point "hangs me." Government Trial Ex. DE–X–10.

Additionally, Enright's legal and business strategy prior to his investigation and indictment suggests that he knew or was advised about the fine line of the law on the issue of willfulness. He consulted with lawyers, the Internal Revenue Service and the State of New Jersey's equivalent agency in his attempts to provide cover for his position. He sought signed statements from his suppliers that all taxes had been paid on PetroPlus' purchases, even though the selling price clearly indicated that they were not.

Instead of seeking a legal opinion as to the dictates of the law, Enright pushed his lawyers to craft their interpretation of the law to suit his needs. The suggestion that Bennett provided erroneous legal advice is contradicted by the evidence that Enright himself dictated legal strategy to his lawyers from Picco, Mack, including the position that "reason to know" should be interpreted narrowly, well before Bennett became involved with his case. Enright's statement in his petition that his "understanding of the law here (and thus his guilt or innocence) was derived wholly from what his lawyers told him" misrepresents the situation. Enright's Mem. of Law at 23. To the contrary, Enright engaged in a lengthy dialogue with his lawyers regarding the precise limits of the tax evasion statute and its elements, pushing them to adopt an interpretation more favorable to Enright's position.

■ Given this Court's doubts regarding Enright's account of the advice given him by Bennett, this Court cannot conclude that Bennett's performance was deficient. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, un-

der the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). Although the Third Circuit held in *Day* that a defendant's right to effective assistance of counsel was violated where his attorney's erroneous advice regarding a plea offer undermined his ability to make an intelligent decision, the Court refused to define a precise standard of performance of defense counsel in the plea bargaining context.[6] *Day*, 969 F.2d at 43.

Here, Bennett's overall performance throughout trial illustrates that he was not ill-informed nor did he misunderstand the applicable law. Enright has not alleged that Bennett failed to research his position, nor could he, given the understanding of the applicable law that Bennett brought to his arguments. *See, e.g.*, Letters to the Court dated April 8, 1998, May 26, 1998, and June 1, 1998, regarding Enright's Motion for Acquittal and Proposed Jury Instructions. Unlike *Kimmelman v. Morrison*, where the United States Supreme Court affirmed the district court's determination that defense counsel's performance was unconstitutionally deficient, if Bennett had misunderstood the law, it was not due to any failure by him to adequately prepare for Enright's defense. *Cf. Kimmelman v. Morrison*, 477 U.S. 365, 384–85, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) (characterizing defense counsel's professed ignorance of the law as "a weak attempt to shift blame for inadequate preparation").

Enright speculates that "[p]erhaps Mr. Bennett wanted a trial for some other

reason" and closes with the unsupported conclusory statement that "he surely performed in a substandard way in explaining the risks to Enright." Enright's Reply Mem. of Law at 3. However, during Enright's appeals, his current counsel described Bennett's strategy—the same strategy he now assails in Enright's habeas petition as wholly incorrect—as the "classic tax evasion defense." Appellant's Brief at 12. Although it is unnecessary for this Court to reach the issue of deficient performance given that Enright is unable to demonstrate prejudice, this is not enough to overcome the presumption of reasonableness accorded counsel by *Strickland*.

### IV.

For the reasons set forth above, this Court will deny Petitioner's application for a writ of habeas corpus and request for a hearing pursuant to 28 U.S.C. § 2255. The Court will issue an appropriate order.

### ORDER DENYING APPLICATION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2255

Currently before the Court is Petitioner's application for writ of habeas corpus pursuant to 28 U.S.C. § 2255. The Court having considered the submissions of the parties, and for the reasons set forth in an Opinion which findings of fact and conclusions of law are incorporated herein by reference, and for good cause appearing,

**IT IS** on this *10th* day of December, 2004,

**ORDERED THAT:**

---

**6.** Providing incorrect advice regarding a possible plea is not *per se* deficient. *See, e.g. Hill v. Lockhart*, 474 U.S. 52, 60, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (reserving the issue of whether incorrect advice regarding parole eligibility could be deemed deficient performance); *Day*, 969 F.2d at 43; *United States v.*

*Nino*, 878 F.2d 101, 105 (3d Cir.1989) (reserving the issue of whether counsel's performance was deficient in light of holding that petitioner was not prejudiced by counsel's failure to inform him of deportation consequences of guilty plea).

1. Petitioner's application for writ of habeas corpus pursuant to 28 U.S.C. § 2255 is **DENIED.**

2. Because this Court finds that Petitioner has not made a substantial showing of the denial of a Constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c).