VICTOR MARRERO, United States District Judge.
Petitioner Christopher E. Reese ("Reese") is currently serving a sentence of 108 months' imprisonment after a jury found him guilty of various federal crimes. Reese moves to vacate, set aside, or otherwise correct his conviction and sentence pursuant to 28 U.S.C. Section 2255 (" Section 2255"). (See"Motion," Dkt. No. 189.[1] )
*840 Reese claims he was denied his Sixth Amendment right to the effective assistance of counsel because his lawyer failed to adequately advise him regarding two plea offers that Reese rejected before defending his case at trial. For the reasons discussed below, the Motion is DENIED.
I. BACKGROUND
A. PRETRIAL AND TRIAL PROCEEDINGS
On February 20, 2013, a grand jury returned a four-count superseding indictment charging Reese with: (a) one count of conspiracy to commit bank fraud in violation of 18 U.S.C. Section 1349 ; (b) one count of bank fraud in violation of 18 U.S.C. Section 1344 ; (c) one count of conspiracy to commit wire fraud in violation of 18 U.S.C. Section 1349 ; and (d) one count of aggravated identity theft in violation of 18 U.S.C. Section 1028A. (See"Superseding Indictment," Dkt. No. 35.) The aggravated identity theft charge carried a mandatory two-year prison sentence that would run consecutively to any sentence Reese might receive for the other charged counts. See 18 U.S.C. §§ 1028(a)(1), (b)(2).
Before trial commenced, the Government conveyed two plea offers to Reese's trial counsel, Ronald L. Garnett ("Garnett"). First, on March 1, 2013, the Government extended a plea offer that would expire on March 4, 2013. (See"First Plea Offer," A. 14-21.) If Reese accepted the First Plea Offer, he would agree to plead guilty to the first three counts of the Superseding Indictment, which did not include the aggravated identity theft count, and the Government would then "move to dismiss any open Counts against [Reese]." (Id. at 16.) Under the First Plea Offer, the parties would stipulate that the applicable sentencing range under the United States Sentencing Guidelines (the "Guidelines") would be 57 to 71 months' imprisonment, and that Reese would be required to forfeit $157,661 to the United States. (Id. at 18.) The First Plea Offer also included the following clause describing the Court's discretion in imposing a sentence (the "Discretion Clause"):
It is understood that the sentence to be imposed upon the defendant is determined solely by the Court. It is further understood that the Guidelines are not binding on the Court. The defendant acknowledges that his entry of a guilty plea to the charged offenses authorizes the sentencing court to impose any sentence, up to and including the statutory maximum sentence.
(Id. at 19-20.) Reese rejected the First Plea Offer, and on March 4, 2013, Reese pled "not guilty" to all charged counts at an arraignment before Magistrate Judge Sarah Netburn. (See Dkt. Minute Entry for 3/4/2013.)
On March 5, 2013, the Government conveyed to Garnett a second plea offer with an expiration date of March 8, 2013. (See"Second Plea Offer," Dkt. No. 232, Ex. A.) The Second Plea Offer was materially identical to the First Plea Offer except for two amendments. First, the forfeiture figure was reduced to $69,747. (See id. at 2.) Second, the Second Plea Offer explicitly stated that if Reese accepted the offer, the Government would move to dismiss the aggravated identity theft charge. (See id. ) The Second Plea Offer contained the same Discretion Clause as the First Plea Offer. (See id. at 5.) It is undisputed that the two amendments rendered the Second Plea Offer more favorable to Reese than the First Plea Offer.
On March 8, 2013, the Court held a conference (the "March 8 Conference") to confer with the parties regarding the status of plea negotiations. (See Dkt. No. 127.) The Government first represented *841 that it understood that "Mr. Reese is aware of the plea, has discussed it with Mr. Garnett, understands the terms, has reviewed them carefully, and ... is inclined today to say that he is turning down the plea offer and wants to head to trial as scheduled." (Id. at 5.) Garnett then stated, to the same effect, that:
I have discussed the government's plea offer; they provided me with a plea agreement. I've reviewed it with my client. We've discussed it extensively. He has reviewed it and has raised certain issues with it, and as it is at this juncture in the case, he's informed me that he does not wish to accept that offer and will proceed to trial.
(Id. at 6.) The Court then asked Reese if he would confirm on the record that "you received a plea offer from the government, that you know the terms of such offer and understand them, that you have discussed them with counsel, and that you're knowingly and willingly, having been informed by counsel, rejecting such a plea offer?" (Id. at 6.) Reese responded "Yes, your Honor. Thank you. I've reviewed the plea agreement, take issue and exception with a number of conditions and terms of the plea, and, for that reason, I've declined the offer." (Id. )
Reese's trial commenced on March 25, 2013. The jury found Reese guilty of all four counts charged in the Superseding Indictment, and the Court sentenced Reese to 108 months' imprisonment. (See Dkt. No. 132.) The Court of Appeals for the Second Circuit affirmed Reese's conviction and sentence on direct appeal. (See Dkt. No. 187.)
B. THE MOTION
Reese filed the Motion pro se pursuant to 28 U.S.C. Section 2255, asking the Court to appoint him counsel, schedule an evidentiary hearing, and vacate, set aside, or correct his sentence. (See Motion at 1-2.) In support of the Motion, Reese filed an affidavit in which he attests that Garnett did not inform Reese of the First Plea Offer until "minutes before" the offer was to expire, immediately before his arraignment on March 4, 2013. (See"Reese Affidavit," Dkt. No. 189 at 3.) Reese attests that Garnett informed him that he had to decide whether to accept the First Plea Offer immediately, without reviewing the written offer. (See id. at 3-4.) Reese claims that instead of allowing Reese to review the written plea offer, Garnett merely summarized its terms for Reese. (See id. )
Reese attests that as Garnett explained it, under the First Plea Offer, Reese would be required to plead guilty to all four charged counts in the Superseding Indictment and would then be sentenced under a stipulated sentencing range of 46 to 57 months' imprisonment. (See id. at 3-4.) Reese further attests that Garnett informed him that the stipulated sentencing range would be binding upon the Court under the First Plea Offer. (See id. at 3.) Reese attests that Garnett further advised that if he were to reject the offer and was subsequently found guilty of all charges at trial, then he would face a sentencing range of 57 to 71 months' imprisonment. (See id. at 4.) Reese attests that Garnett did not provide him with any advice as to whether he should accept the First Plea Offer. (See id. ) Reese rejected the Fist Plea Offer "[i]n view of the information provided by counsel." (Id. )
With respect to the Second Plea Offer, Reese attests that Garnett again informed Reese of the offer only minutes before it expired and immediately before Reese had to appear in Court for the March 8 Conference. (See id. at 4-5.) Once again, according to Reese, Garnett did not provide Reese with a copy of the Second Plea Offer and instead merely verbally summarized *842 its terms. (See id. ) Garnett again told Reese that he had to decide whether to accept the Second Plea Offer immediately. (See id. ) Reese attests that Garnett informed him that the Second Plea Offer was the "same" as the first one, with the one material change being that the agreed upon forfeiture number was lower in the Second Plea Offer. (See id. ) Reese asserts that Garnett again refused to provide Reese with any advice as to whether he should accept the offer, and Reese rejected the Second Plea Offer. (See id. at 5.)
Reese attests that his counsel provided him with copies of the plea offers after the conclusion of the trial. (See id. ) Reese attests that after reviewing the written terms of both plea offers, he learned that Garnett had provided him with inaccurate summaries of the offers in two important respects. First, he learned that the stipulated Guidelines sentencing range in each offer was 57 to 71 months' imprisonment, and not 46 to 57 months, as Garnett had advised. (See id. ) Second, Reese attests, he learned that if he accepted either offer, the Government would have agreed to dismiss the aggravated identity theft count from the indictment. (See id. )
Reese attests that he rejected the plea offers because of the combination of misinformation provided by his counsel, the lack of time he was provided to consider the offers, and Garnett's "gross underestimation of [his] post-trial sentencing exposure." (Id. at 6.) Additionally, Reese attests that but for his counsel's deficient advice, he would have accepted the plea offers, which would have "resulted in a prison term of nearly 50% less than the sentence imposed after trial." (Id. )
By order dated January 29, 2016, the Court denied the Motion. (See Dkt. No. 190 at 6.) Reese moved for reconsideration, and the Court then denied Reese's motion for reconsideration. (See Dkt. No. 195.) The Court reasoned that even if Reese's trial counsel had failed to adequately advise him regarding the two plea offers, Reese failed to show that counsel's alleged deficient performance prejudiced him since he could not demonstrate that he would have accepted either plea offer but for counsel's errors. (See id. at 7-8.) The Court concluded that Reese's own self-serving testimony could not alone establish prejudice. (See id. )
C. REMAND FROM THE COURT OF APPEALS
Reese appealed the Court's orders denying the Motion, and the Court of Appeals vacated the Court's judgment and remanded for further proceedings. See Reese v. United States, 688 F. App'x 92, 93 (2d Cir. 2017) ("Remand Order"). The Court of Appeals held that although Reese's self-serving testimony could not alone establish prejudice, Reese had set forth other objective evidence that, along with his own testimony, could establish that he would have accepted the plea offer, assuming that his allegations about Garnett's deficient performance were true. See id. at 93-94. Specifically, the Court of Appeals stated that the significant disparity between the stipulated sentencing range in the plea offer and the actual sentence he received after trial, along with Reese's testimony at trial in which he accepted "some responsibility for participating in the crimes," constituted objective evidence that Reese likely would have accepted the plea offer if he was adequately advised of it. Id. The Court of Appeals therefore remanded for the Court to develop a "more robust record" to determine whether Reese's representations about Garnett's alleged deficient performance are credible, particularly with respect to Reese's claims "that counsel failed to accurately present the terms of the [plea] offer, greatly underestimated Reese's sentencing *843 exposure, and did not offer advice as to whether Reese should accept the offer." Id. at 94.
D. PROCEEDINGS ON REMAND
On remand, the Court appointed habeas counsel for Reese and ordered the Government to file a response to the Motion along with an affidavit from Garnett. (See Dkt. No. 210.) The Government submitted a brief arguing that Reese's allegations about Garnett's alleged deficient performance are not credible because they are contradicted by Reese's representations to the Court at the March 8 Conference where Reese stated on the record that he had reviewed the Second Plea Offer with his counsel. (See"Gov. Brief" at 10-13, Dkt. No. 227.) The Government also argues that the record from the March 8 Conference, along with letters Reese submitted to the Court asking for an expedited trial date, demonstrate that he had no intention of accepting a plea offer and so was not prejudiced by any alleged deficient performance. (See id. at 13-15.)
Additionally, the Government submitted an affidavit from Garnett that the Government argues contradicts Reese's allegations. (See"Garnett Affidavit," Dkt. No. 227, Ex. A; Gov. Brief at 11-12.) Garnett attests that at the time he was appointed to represent Reese, he had been practicing law for 40 years. (See Garnett Affidavit ¶ 2.) Garnett attests that in "my many years of law practice, it was my standard practice to provide any and all documents or plea offers received from the Government to my client, and to review these documents and plea offers with the client." (Id. ¶ 4.) Garnett also attests that he recalls discussing both of Reese's plea offers with Reese before Reese decided to reject them. (See id. ¶¶ 5-7.)
With respect to the Second Plea Offer, Garnett attests that he met with Reese on March 7, 2013 at the Metropolitan Correctional Center in Manhattan, New York ("MCC") and discussed the terms of the Second Plea Offer with Reese at that meeting. (See id. ¶ 7.) Garnett attests that this March 7, 2013 meeting is confirmed in his personal calendar from 2013, in which there is an entry scheduling his meeting with Reese on March 7 and a check mark next to that entry, indicating that the meeting took place. (See id. )
Reese submitted a brief through counsel, arguing that the Garnett Affidavit did not address the substance of the discussions Garnett had with Reese before he rejected the plea offers. (See"Reese Brief" at 2, 14-16, Dkt. No. 232.) As a result, Reese argues, his allegations that Garnett failed to accurately present the terms of the offers, greatly underestimated Reese's sentencing exposure, and failed to offer Reese advice about whether to accept the offer all remain "uncontroverted." (See id. ) Reese further argues that the transcript from the March 8 Conference does not undermine Reese's allegations, as the transcript shows only that Reese discussed the Second Plea Offer with Garnett but does not demonstrate what Garnett told Reese about the offer. (See id. at 16-17.) Additionally, Reese argues, the Court of Appeals already rejected the Government's argument that the transcript of the March 8 Conference undermines Reese's allegations. (See id. )
The Court then held an evidentiary hearing to develop a further record of the circumstances surrounding Reese's rejection of the two plea offers. (See Dkt. Nos. 247 & 252.) The Government presented Garnett as a witness, and he testified that it was his practice to visit his clients "often" and to provide copies of any plea offers to his clients. (See"Garnett Testimony" at 9, Dkt. No. 24 7.) He also testified that he recalled discussing both the *844 First Plea Offer and the Second Plea Offer with Reese before Reese rejected those offers. (See id. at 13, 18.) Garnett testified that he would have discussed the "pros and cons" of accepting each offer with Reese, but that he always made clear that the ultimate decision to accept or reject a plea offer was left to the client. (Id. at 18; see also id. at 15 ("I never tell a client to accept or not accept. I present options concerning the offer, and I explain as best I could at the time what that meant.").) Garnett testified that it was his practice to discuss the stipulated Guidelines sentencing range contained in any plea offer with his client and to provide the client with "pages from the sentencing guidelines manual concerning" the applicable Guidelines range. (Id. at 18.)
Garnett then testified about his scheduling system with reference to his personal calendar from 2013, which the Government offered into evidence. (See id. at 19.) Garnett testified that he recorded all court appearances and client meetings in his calendar, and that he would note after each planned meeting whether the meeting actually took place. (See id. at 19-20.) The calendar indicated that Garnett met with Reese on March 7, 2013 at the MCC. (See id. at 20-21.) The calendar contained a "checkmark" next to the entry for March 7, indicating, Garnett testified, that Garnett had confirmed after the scheduled meeting that it did in fact take place.[2] (See id. at 21.)
The Government then introduced the "Attorney Log Book" from the MCC for the visits that occurred on March 7, 2013. (See id. at 22.) Garnett testified that the log contained an entry indicating that on March 7, 2013, Garnett signed in to the MCC at 1:02 p.m. and signed out at 3:10 p.m. The Government also introduced the MCC's log for the "Attorney Conference Room," which noted that on March 7, 2013, Garnett signed into an attorney conference room at 1:15 p.m., signed out at 3:10 p.m., and met with Reese, and no one else, during that time. (See id. ) Garnett testified that accounting for a likely delay in Reese's arrival to the conference room, these log entries indicate that he met with Reese for approximately an hour and a half on March 7, 2013. (See id. at 24.) Garnett testified that at that meeting on March 7, he would have discussed the Second Plea Offer with Reese and provided him with a copy of the offer. (See id. )
On cross-examination Garnett conceded that based on his calendar entries, he did not successfully meet with Reese between the time the Government conveyed the First Plea Offer on March 1, 2013, and the arraignment at which Reese rejected the Offer on Mach 4, 2013. (See id. at 32, 38-39.) Indeed, the first time Garnett met privately with Reese to discuss either plea offer was at the MCC on March 7, 2013. (See id. at 48.) On cross-examination Garnett repeated twice that when he discussed a plea offer with a client, he would advise the client about the strengths and weaknesses *845 of his or her case and the potential benefits and drawbacks of a particular plea offer, but that he left the ultimate decision to accept or reject a plea offer to the client. (See id. at 58, 61.)
Reese then testified in support of the Motion. (See"Reese Testimony," Dkt. No. 252.) Reese testified that the first time he heard about the First Plea Offer was immediately prior to his arraignment before Judge Netburn on March 4, 2013, when Garnett met with Reese in the "holding cell" behind the courtroom. (See id. at 9.) Reese testified that Garnett informed him of the plea offer and stated that Reese would have to decide to accept or reject the offer immediately. (See id. ) Reese testified that Garnett did not provide him with a copy of the offer, or even show him a copy of it, but informed Reese that the offer contained a sentencing range of 46 to 57 months' imprisonment, that the stipulated sentencing range was "a binding plea on the judge," and that if Reese rejected the offer, his "exposure would be 57 to 71 months if [he] was convicted after trial." (See id. at 9-10.) Reese testified that the conversation he had with Garnett about the First Plea Offer lasted between four and five minutes. (See id. at 10.)
Reese testified that he had no recollection of seeing Garnett between March 4, 2013 and March 8, 2013, let alone of having any discussion regarding the Second Plea Offer before the March 8 Conference. (See id. at 11-12.) Reese testified that the only discussion he had with Garnett before rejecting the Second Plea Offer was in the holding cell next to the courtroom immediately before he rejected the Second Plea Offer at the March 8 Conference. (See id. at 12.) Reese testified that Garnett informed him that the Second Plea Offer was identical to the first except for the reduced forfeiture figure in the Second Plea Offer. (See id. ) Reese testified that Garnett did not provide him with a copy of the Second Plea Offer before he rejected it at the March 8 Conference. (See id. ) Reese then addressed his statements to the Court at the March 8 Conference and stated that when he said to the Court that he had "reviewed the plea agreement," he meant that "me and Mr. Garnett had discussed it and I had declined to accept it ...." (Id. at 16.)
Reese then testified that if Garnett had accurately explained to him that the plea offers stipulated to a Guidelines sentencing range of 57 to 71 months' imprisonment, but that he could face a sentence of 108 months if he were convicted after trial, then he would have accepted either plea offer. (See id. at 17.) Reese also stated that before he rejected the two plea offers, Garnett did not advise him as to whether he had a meritorious defense to the charges brought against him. (See id. at 17-18.)
On cross examination, Reese confirmed that he denies having met with Garnett between March 4, 2013 and March 8, 2013, despite that his testimony is belied by two logs from the MCC reflecting that such a meeting occurred on March 7, 2013. (See id. at 19-21.) Reese insisted that he did not meet with Garnett on March 7, 2013. (See id. at 21.)
After the hearing, Reese submitted a brief through counsel arguing that the hearing established that Garnett's failure to adequately advise Reese about the plea offers constituted deficient performance that prejudiced Reese. (See"Reese Post-Hearing Brief" at 1-2, Dkt. No. 251.) Specifically, Reese argues that Garnett's testimony showed that he failed to adequately advise Reese about whether to accept the plea offers, and that Garnett did not know enough about Reese's case at the time the offers were conveyed to adequately advise Reese about whether to accept them. (See *846 id. at 1-2, 12-15.) Reese also argues that his testimony at the hearing, along with other objective evidence, showed that he would have accepted the plea offers but for Garnett's constitutionally deficient advice. (See id. at 16-18.)
II. DISCUSSION
A. LEGAL STANDARDS
A prisoner in federal custody may move to vacate, set aside, or correct his sentence if it was imposed in violation of "the Constitution or laws of the United States." 28 U.S.C. § 2255(a). In the event that a court finds that the sentence was imposed based on such a violation, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." Id. § 2255(b).
The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. U.S. Const. Amend. VI ; see also Kimmelman v. Morrison, 477 U.S. 365, 374-75, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). "Occasionally, the performance of defense counsel is so dismal that it ripens into the deprivation of counsel altogether and potentially violates the defendant's Sixth Amendment rights." Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001). However, criminal defendants asserting ineffective assistance of counsel have a high threshold to meet "in order to deter a baseless attack on the performance of counsel in a last-ditch effort to avoid a conviction or reduce the sentence." Percan v. United States, 294 F.Supp.2d 505, 511 (S.D.N.Y. 2003) ; see also Kimmelman, 477 U.S. at 382, 106 S.Ct. 2574.
To prove ineffective assistance of counsel, the petitioner must satisfy a two-prong test. First, he must show that "counsel's performance was deficient," meaning that the "representation fell below an objective standard of reasonableness" according to "prevailing norms." Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687, 104 S.Ct. 2052. Second, the petitioner must "affirmatively prove prejudice" by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 693-94, 104 S.Ct. 2052.
It is well established that the right to counsel "extends to the plea-bargaining process." Lafler v. Cooper, 566 U.S. 156, 162, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012). "[D]efense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused," and a failure to communicate a plea offer constitutes deficient performance. Missouri v. Frye, 566 U.S. 134, 145-47, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012).
Moreover, counsel's duties during the plea bargaining process do not end with the mere communication of a plea offer: "defense counsel must give the client the benefit of counsel's professional advice on this crucial decision of whether to plead guilty." Purdy v. United States, 208 F.3d 41, 44 (2d Cir. 2000) (internal quotation marks and citations omitted). Counsel's professional advice to the client should entail an explanation of: the terms of the plea offer, the "strengths and weaknesses" of the client's case, and the difference between the sentencing exposure presented in the plea offer and that which the client would most likely face if he were convicted at trial. Id. at 45 ; see also United States v. Gordon, 156 F.3d 376, 380 (2d Cir. 1998)
*847 ("[K]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." (citation omitted) ). Although defense counsel must provide the client with the professional advice needed to decide whether to accept a plea offer, "the ultimate decision whether to plead guilty must be made by the defendant," and "a lawyer must take care not to coerce a client into either accepting or rejecting a plea offer." Purdy, 208 F.3d at 45.
B. APPLICATION
The Court's analysis is guided by the Court of Appeals's Remand Order, which instructed the Court to develop a more robust record to consider the credibility of Reese's allegations that "counsel failed to accurately present the terms of the offer, greatly underestimated Reese's sentencing exposure, and did not offer advice as to whether Reese should accept the offer." Reese, 688 F. App'x at 94. The Court considered Reese's testimony, along with Garnett's testimony and the other record materials developed in furtherance of the Remand Order. At the evidentiary hearing, the Court also had opportunity to observe the witnesses' overall demeanor on the stand. On that basis, as reinforced by other record evidence, the Court assessed their credibility and weighed their testimony and written submissions. Upon such review, the Court finds that Reese's allegations with respect to Garnett's alleged deficient performance are not credible. Accordingly, as regards various factual issues on which Reese's statements materially conflicted with Garnett's, the Court found Reese's account less than truthful and rejected it, and credited Garnett's recitation instead.
In both his written affidavit and his oral testimony, Reese claimed that Garnett informed him of the Second Plea Offer only minutes before the March 8 Conference, and thus provided Reese with only a few minutes to decide whether to accept the Second Plea Offer.[3] (See Reese Affidavit at 4-5; Reese Testimony at 11-12, 19-21.) To that end, Reese testified repeatedly that he did not meet with Garnett on March 7, 2013. (See Reese Testimony at 19-21.) These claims are not credible in light of the fact that the March 7 meeting was confirmed by two independent record sources. First, Garnett's calendar showed that he had scheduled a meeting with Reese on March 7, 2013, and that Garnett later confirmed that the meeting took place by writing a checkmark next to the calendar entry for that meeting. (See Garnett Testimony at 20-22.) Second, the March 7 meeting was corroborated by two visitor logs at the MCC, which specifically indicated that Garnett visited Reese on March 7, 2013. (See id. at 24.)
The MCC logs also indicate that Garnett met with Reese for approximately an hour and a half on March 7, 2013. (See id. ) The MCC logs thus create an objective, tangible record of an extended attorney-client meeting the day before Reese told the Court at the March 8 Conference that "I've reviewed the plea agreement, take issue and exception with a number of conditions *848 and terms of the plea, and, for that reason, I've declined the offer." (Dkt. No. 127 at 6.) This sequence of events - a lengthy meeting on March 7, most likely scheduled on March 7 in anticipation of and preparation for the conference with the Court on March 8, and then Reese's statements to the Court on the following day - substantiates Garnett's testimony that he discussed the details of the Second Plea Offer with Reese on March 7. (See Garnett Testimony at 18.) Additionally, the length of the meeting, along with Garnett's testimony about his experience representing criminal defendants and his practices with respect to those representations, indicates that at the March 7 meeting Garnett reviewed each provision of the Second Plea Offer with Reese, and advised Reese regarding the offer's "pros and cons." (Id. at 18, 24.) Finally, Garnett's testimony indicates that he provided Reese with a copy of the Second Plea Offer at the March 7 meeting, along with relevant excerpts of the Guidelines. (See id. )
Reese's alternate version of these events is not credible. By Reese's account, the March 7 meeting never took place, despite the record evidence to the contrary, and his statements to the Court at the March 8 Conference that "I've reviewed the plea agreement" merely referenced a four to five minute discussion he had with Garnett during which Garnett verbally summarized the Second Plea Offer. (See Reese Testimony at 16.) Reese's proposed interpretation of his statements at the March 8 Conference is especially implausible given the fact that throughout this litigation he has repeatedly contacted the Court when he was dissatisfied with his various counsels' representations and that, by his own admission, he is "not a stranger to speaking directly to the Court when [he] want[ed] to complain about something." (Id. at 24.)
Reese also argues that Garnett's testimony about his general approach to advising clients about plea offers indicates that he failed to provide his clients with constitutionally effective counsel. (See Reese Post-Hearing Brief at 12-14.) Reese argues that Garnett "admitted that he never advised clients about whether they should accept a plea offer," and that "Garnett appeared to believe that such advice is beyond the lawyer's role and would be somehow overreaching." (Id. at 12-13.) Although there were instances in Garnett's testimony when he seemed to indicate that he would not advise clients as to whether or not to accept a plea offer, leaving the ultimate decision entirely with the clients, Garnett repeatedly clarified that his approach was to review with clients the "pros and cons" of accepting each offer by advising them about the strengths and weaknesses of their cases and the benefits and drawbacks of a given plea offer. (See, e.g., Garnett Testimony at 15, 18, 61.) Garnett emphasized that the advice he did not offer, unless prompted by a client, was whether the client should ultimately accept or reject a plea offer. (See id. ) Garnett's approach is precisely the one prescribed by the Court of Appeals for the Second Circuit, which has held that although defense counsel must provide the client with the professional advice needed to decide whether to accept a plea offer, "the ultimate decision whether to plead guilty must be made by the defendant." Purdy, 208 F.3d at 45. Thus, Garnett's descriptions of the advice he gave do not indicate a failure to provide constitutionally effective counsel.
In sum, the Court finds that Reese's allegations that Garnett provided him with insufficient advice regarding the Second Plea Offer are not credible. The Court is instead persuaded that Garnett reviewed the Second Plea Offer with Reese and provided him with constitutionally effective *849 advice about it during their March 7 meeting. As a consequence of these findings, the Court is also not persuaded by Reese's claims that Garnett mischaracterized the terms of the Second Plea Offer and significantly underestimated his sentencing exposure should he be convicted at trial.
First, Reese's allegations that Garnett misrepresented the stipulated Guidelines range in the Second Plea Offer and advised Reese that the stipulated sentencing range would be binding on the Court if the Court accepted the parties' plea agreement is not credible in light of the fact that the Court finds that Garnett reviewed the Second Plea Offer with Reese for about one and one half hours. In reviewing the offer, Reese would have seen the stipulated Guidelines range and the very explicit Discretion Clause explaining that the Court had the discretion to impose a sentence different from the one stipulated to by the parties. Moreover, Garnett's over 40 years of experience as a criminal defense lawyer in the federal courts renders it even less plausible that he would not have informed Reese of the applicable Guidelines range if he proceeded to trial, or that he would have erroneously told his client that the stipulated Guidelines range in the Second Plea Offer would be, as Reese claims, "a binding plea on the judge" (Reese Testimony at 9). C.f. Nancy J. King & Michael E. O'Neill, Appeal Waivers and the Future of Sentencing Policy, 55 Duke L.J. 209, 242 (2005) (showing that plea agreements that include a binding stipulated sentencing range are far less prevalent in federal cases than agreements that leave the final sentencing determination to the discretion of the courts).
Second, Reese's allegation that Garnett advised that if Reese were convicted at trial he would face a sentence of 57 to 71 months' imprisonment - the same sentencing range stipulated to in the Second Plea Offer - is not credible in light of the fact that the Court credits Garnett's testimony that he extensively reviewed the Second Plea Offer with Reese. The notion that Garnett would equate Reese's exposure under the Second Plea Offer with his potential exposure at trial is especially not credible considering that the Second Plea Offer explicitly stated that the aggravated identify theft count would be dismissed under the plea agreement, and Reese attested to knowing that the aggravated identity theft charge carried a mandatory consecutive two-year sentence. (See Reese Affidavit at 4 (attesting that at the time Garnett discussed the plea offers with Reese, Reese knew that the aggravated identity theft charge carried a mandatory two year term).)
Because the Court finds that Reese's allegations about Garnett's alleged failures to adequately advise Reese about the Second Plea Offer are not credible, Reese has not met his burden to show that Garnett's representation "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88, 104 S.Ct. 2052. The Motion is therefore denied.
III. ORDER
For the reasons stated above, it is hereby
ORDERED that the motion (Dkt. No. 18 9) of petitioner Christopher E. Reese ("Reese") to vacate, set aside, or otherwise correct his conviction and sentence pursuant to 28 U.S.C. Section 2255 is DENIED ; and it is further
ORDERED that Reese's motion (Dkt. No. 257) for release on bond pending review of his motion to vacate, set aside, or otherwise correct his conviction and sentence is DENIED.
SO ORDERED.

Unless otherwise noted, all docket citations in this Decision and Order refer to the docket for case number 12-cr-0629. Citations preceded by "A." refer to the pages of the appendix from Reese's appeal to the Court of Appeals for the Second Circuit, Appeal No. 16-516.

The calendar contained several other detailed entries about Garnett's representation of Reese, which demonstrated that Garnett's calendaring system detailed whether or not planned meetings actually took place. The calendar indicated that Garnett had scheduled to meet Reese at 12:00 p.m. on March 4, 2013 in the "cellblock of th[e] courthouse" but that Reese never arrived at that meeting. (Garnett Testimony at 20.) Then, the entry for 2:15 p.m. on March 4, 2013 indicated that Reese and Garnett attended a court conference before Magistrate Judge Netburn. (See id. ) The calendar also indicated that Garnett had planned to meet with Reese at the MCC on March 6, 2013, but that the planned meeting never took place. (See id. ) Finally, the calendar indicated that on March 8, 2013, Garnett was scheduled to appear before the Court with Reese at 1:30 p.m. but that the conference was then rescheduled to 4:30 p.m. that day. (See id. )

Although the Government presented Reese with two plea offers, it is Garnett's conduct with respect to the Second Plea Offer that is relevant to the present inquiry; since the Second Plea Offer was more favorable to Reese than the First Plea Offer in every respect, Reese could not have been prejudiced by any failure of Garnett to adequately advise Reese regarding the terms of the First Plea Offer so long as he did provide sufficient advice with respect to the Second Plea Offer. See Lafler, 566 U.S. at 163, 132 S.Ct. 1376 (stating that to show prejudice "[i]n the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice").